Leon Dayan, SBN 153162
Abigail V. Carter*
Ramya Ravindran*
Lane M. Shadgett*
J. Alexander Rowell*
**BREDHOFF & KAISER P.L.L.C.**
805 Fifteenth Street NW, Suite 1000
Washington, D.C. 20005
Tel. (202) 842-2600
Fax (202) 842-1888
ldayan@bredhoff.com
acarter@bredhoff.com
rravindran@bredhoff.com
lshadgett@bredhoff.com
arowell@bredhoff.com
*Pro hac vice

Daniel Feinberg, SBN 135983
Catha Worthman, SBN 230399
Anne Weis, SBN 336480
**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
catha@feinbergjackson.com
anne@feinbergjackson.com

*Attorneys for Plaintiffs* (Additional Counsel not listed)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No.: 3:25-cv-03070-JD<br><br>**SUPPLEMENTAL DECLARATION OF RANDY L. ERWIN** |

Supplemental Declaration of Randy L. Erwin, No. 3:25-cv-03070-JD

# SUPPLEMENTAL DECLARATION OF RANDY L. ERWIN

I, Randy L. Erwin, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. I am the National President of the National Federation of Federal Employees, IAM, AFL-CIO ("NFFE"). NFFE is a national labor organization and unincorporated membership organization headquartered in Washington, D.C. NFFE is America's first civil service federal employee union. NFFE is an affiliate of the International Association of Machinists and Aerospace Workers (IAM).

3. I have been the National President of NFFE since 2016. Prior to that, I served in other national leadership roles at NFFE. I have been a proud member of NFFE-IAM since 2002.

4. By virtue of my job duties, I am familiar with NFFE's finances. I regularly review monthly dues statements and membership figures. It is important that I know the information in those reports because the amount of revenue received by NFFE and its affiliates determines the union's capacity to organize and represent employees.

5. NFFE has been harmed by the Executive Order in several ways. First, absent relief from the Order, many of NFFE's local affiliates will likely cease to exist as it did with the benefit of collective bargaining rights. Dozens of bargaining units will either be effectively eliminated without Agency recognition, or severely diminished in size as a result of the sweeping loss of bargaining rights and recognition across the federal government.

6. The Executive Order has also deprived NFFE of the authority to bargain on behalf of employees at excluded agencies, including the right to receive advance notice of changes to conditions of employment, initiate bargaining over conditions of employment, and engage in mid-term bargaining over terms and conditions of employment at those agencies. NFFE has had difficulty enforcing the substantive and procedural protections NFFE bargaining for in its collective bargaining agreements with the excluded agencies. And when excluded agencies violate or ignore the substantive and procedural protections in those agreements – as they are already doing, at OPM's instruction – NFFE will be unable to pursue grievances or seek

assistance from the FLRA.

7. I am personally aware of a RIF process already underway at the General Services Administration, an excluded agency where NFFE represents employees. Stripped of its bargaining rights, NFFE will be blocked when it seeks to enforce the applicable regulations and contractual rights that apply in these scenarios. Even if NFFE eventually obtains relief, at that point NFFE bargaining units could be drastically reduced or eliminated.

8. On April 8, 2025, after I signed my initial declaration in this case, the Chief Human Capital Officers Council ("CHCOC"), an interagency forum led by the OPM Director, distributed a Frequently Asked Questions document ("FAQs") instructing agencies how to implement the Executive Order and OPM Memorandum. The FAQs instruct excluded agencies to ignore the rights and obligations of their unionized employees, as set forth in statute and in the collective bargaining agreements. Agencies are generally complying with OPM's instructions and refusing to process grievances filed by NFFE, including holding arbitration hearings, refusing to provide advance notice of changes or negotiating with NFFE on negotiable changes, rescinding official time and union office space, and refusing to withhold and allot voluntary dues from employee paychecks to NFFE. For example, Passports Services within the Department of State has refused to bargain over work schedule changes. The GSA has refused to provide information or bargain on two negotiable subjects: return to work and the reduction-in-force which is in process. The Department of the Air Force has notified us that all negotiations, discussions, or actions related to collective bargaining agreements, grievances, or responses to requests for information concerning any labor related issues are held in abeyance. Thus, NFFE is unable to perform its representational responsibilities and basic role of a union at excluded agencies, to the detriment of the federal employees it represents.

9. Because a majority of NFFE's dues-paying members work for the Excluded Agencies, the Exclusion Order has had a substantial impact on NFFE's finances now that several agencies have implemented the Executive Order, the OPM memorandum and the administration's policy to terminate dues allotments.

10. NFFE's operations are funded solely by members who pay dues to be members of

the union, almost exclusively through Agency payroll deduction. Dues allotments are required by statute and by enforceable provisions we incorporated within our collective bargaining agreements. If the Executive Order remains in effect, NFFE anticipates it may lose approximately $5,500,898 of revenue per year that it previously received from dues paid through payroll deduction.

11. For the two-week pay period ending March 8, 2025 the last full pay period fully unimpacted by the Executive Order – NFFE received a total of $363,363 in withheld dues from various federal employers. For that pay period, allotted dues accounted for more than 99% of all dues-related revenue received by NFFE for federal bargaining units.

12. By contrast, in the most recent pay period for which NFFE has full information, ending April 19, 2025, NFFE received only $151,791 in allotted dues, a reduction of 58.2%.

13. I stated in my first Declaration, "NFFE currently does not have a mechanism to maintain membership of union members replacing Agency payroll deduction." In April 2025, NFFE launched a system to sign up employees directly for dues withholding via personal credit card or bank account draft. NFFE has assigned the majority of staff to focus exclusively on converting memberships from dues allotment to direct dues, which has meant staff time and substantial financial resources have been diverted. Rather than expending time and dues revenue toward regular representational duties, NFFE has invested in the dues conversion project.

14. Although NFFE has made and will continue to make a concerted effort to offset a portion of losses by transitioning members from dues allotment to direct dues, NFFE's total dues-related revenue for the April 19, 2025 pay period alone, decreased by $126,966.

15. If we are able to maintain receiving direct dues on this level for the next year, NFFE will lose $3,301,116 in revenue to fund its operations.

16. If, however, NFFE continues to be prevented from serving as the exclusive bargaining representative of the employees it represented on March 26, 2025, we anticipate many members will decline to pay or stop paying dues directly to NFFE because NFFE is no longer recognized as the exclusive representative for them in the workplace. Most members joined when NFFE was actively representing our federal sector members through negotiating

collective bargaining agreements and assisting employees with enforcing them. We assert contractual and statutory rights on behalf of our federal sector members by filing grievances, unfair labor practice charges, or other complaints through our negotiated grievance procedure or with various federal agencies, including the Federal Labor Relations Authority, the Merit Systems Protection Board, the Office of Special Counsel, and the Federal Labor Relations Authority. NFFE files litigation on employees' behalf in the courts. We also advocate on Capitol Hill and in the media on issues of importance to federal workers and to veterans. Many members may choose not to convert to direct dues because the Executive Order has changed the union's authority and standing and limited our leverage and enforcement tools.

17. We have heard from members who are concerned about NFFE losing strength and bargaining power because of the threat of diminished membership and smaller bargaining units.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: May 7, 2025

_____
Randy L. Erwin