Leon Dayan, SBN 153162
Abigail V. Carter*
Ramya Ravindran*
Lane M. Shadgett*
J. Alexander Rowell*
**BREDHOFF & KAISER P.L.L.C.**
805 Fifteenth Street NW, Suite 1000
Washington, D.C. 20005
Tel. (202) 842-2600
Fax (202) 842-1888
ldayan@bredhoff.com
acarter@bredhoff.com
rravindran@bredhoff.com
lshadgett@bredhoff.com
arowell@bredhoff.com

Daniel Feinberg, SBN 135983
Catha Worthman, SBN 230399
**FEINBERG, JACKSON, WORTHMAN & WASOW, LLP**
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
catha@feinbergjackson.com

*Admitted *pro hac vice*

Attorneys for Plaintiffs (Additional Counsel listed in signature block)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No.: 3:25-cv-03070-JD <br><br> **RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL** |

A stay of a preliminary injunction pending appeal is an "extraordinary request." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021). The mere fact that a court's ruling on a preliminary injunction may be averse to a defendant or contrary to a position advanced by the defendant in the litigation is insufficient. Rather, whether a stay pending appeal is warranted depends on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433. Defendants fall far short of meeting their burden.[1]

## ARGUMENT

### I.  Defendants Have Not Demonstrated They Are Likely to Succeed on Appeal

#### A.  This Court Correctly Exercised Jurisdiction over Plaintiffs' Claims

Defendants begin by arguing yet again that this Court lacks jurisdiction because Plaintiffs' claims must be brought before the Federal Labor Relations Authority. Dkt. 63 at 2-3; *see* Dkt. 44 at 18-21.[2] This Court correctly rejected this argument when granting the preliminary injunction because "the FLRA's authority extends only to those disputes which arise under Chapter 71," and the Exclusion Order "expressly removed the employees of the listed departments, agencies, and subdivisions from Chapter 71's coverage." Dkt. 60 at 15; *see also NTEU v. Trump*, No. 1:25-cv-935, 2025 WL 1218044, at *6 (D.D.C. Apr. 28, 2025) ("The government's argument misses the point: the administrative process of the FSLMRS cannot and does not govern here."), *stayed on other grounds*, 2025 WL 1441563 (D.C. Cir. May 16, 2025).

Defendants do not grapple with the Court's reasoning on that point, instead once again citing only cases involving parties that *within* the coverage of the CSRA. *See* Dkt. 63 at 2-3 (citing *Columbia Power Trades Council v. DOE*, 671 F.2d 325 (9th Cir. 1982); *AFGE, Nat'l Council of*

---

[1] Defendants filed their submission as a motion for "administrative relief" under Civil Local Rule 7-11, which is not the appropriate vehicle for a substantive motion of this type.

[2] Page number citations are to the ECF page numbers.

*HUD Locs. Council 222, AFL-CIO v. FLRA*, 99 F.4th 585 (D.C. Cir. 2024); *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012); *AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019)). However, it is "unlikely that Congress intended for the CSRA to preclude review for parties not even covered by that statute who allege claims outside the . . . FLRA's jurisdiction." *AFGE v. Trump*, 139 F.4th 1020, 1033 (9th Cir. 2025); *see also AFGE Loc. 446 v. Nicholson,* 475 F.3d 341, 348 (D.C. Cir. 2007)(no channeling when executive action at issue takes a claim "outside the FLRA's purview").[3]

### B. Plaintiffs Are Likely to Succeed on Their First Amendment Claim

Defendants make little attempt to demonstrate that they are likely to prevail on the merits of Plaintiffs' First Amendment claim. Defendants contend that this Court "disregarded" the Executive Order's claimed national security justification and "neglected to consider" whether the President would have issued the same Order absent Plaintiffs' First Amendment activity opposing the President's agenda, Dkt. 63 at 3, but the Court's opinion addressed both points. As the Court noted, "a claim of national security does not, of course, automatically negate the Constitution, particularly with respect to the First Amendment." Dkt. 60 at 20; *see also Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (courts "do not defer to the Government's reading of the First Amendment" even when national security interests "are at stake"). Here, Plaintiffs have submitted direct evidence of retaliatory animus in the form of the President's own statements in an official "Fact Sheet" published along with the Executive Order. Dkt. 15-22 at Ex. 3. As the Court correctly pointed out, that Fact Sheet "condemned unions who criticized the President and expressed support only for unions who toed the line," Dkt. 60 at 20, thereby providing strong evidence that the Executive Order was motived by a desire to punish federal unions like Plaintiffs who had been publicly critical of the President's policies. This evidence, alone and in conjunction with Plaintiffs' other evidence, also demonstrated sufficient likelihood that any "presumption of regularity" should not apply and rather that "the opposite conclusion is warranted that 'the President was indifferent to the purposes and requirements of the Act, or acted deliberately in contravention of them.'" *Id.* at 22 (citing *AFGE v. Reagan*, 870 F.2d 723, 728 (D.C. Cir. 1989)).

---

[3] Contrary to Defendants' motion, neither Plaintiffs nor the Court relied on the constitutional nature of Plaintiffs' claims to support the conclusion that those claims are not channeled.

As the very cases Defendants cite in their Motion make clear, upon an evidentiary showing that retaliatory animus was a substantial motivating factor in the challenged action, "the burden *shifts* to the defendant official to establish that even without the impetus to retaliate he would have taken the action complained of." *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022) (emphasis added); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Defendants do not even attempt to make that showing, nor could they credibly do so in light of the clear statements in the Fact Sheet that the President's dividing line between unions who would lose their bargaining rights and those who would maintain them were whether the union was "hostile" to the President's agenda or would "work with him." Dkt. 15-22 at Ex. 3.

While the Fact Sheet is more than sufficient to negate the proposition that the President would have issued the same Executive Order in the absence of retaliatory animus, the unprecedented and stunning overbreadth of the Executive Order further negates that proposition. As this Court recognized, the Order's exclusionary scope is orders of magnitude wider than any prior such order in the half-century history of the statute. Dkt. 60, at 20-21. It sweeps in agencies that have no discernible nexus to national security, from the National Institute of Allergy and Infectious Diseases to the U.S.D.A. Animal Care Program. That is a telling indicator that the Order is the product of animus rather than the statutorily required consideration of specific national security factors. And erasing any possible doubt on that score is that the Order combines its vast over-inclusiveness with surprising under-inclusiveness in carving out law-enforcement employees working *at the very same agencies*.[4] *See, e.g., Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 774 (2018) (exclusions that were "wildly underinclusive" raise "serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint"). It is difficult to see how that strange mixture of over- and under-inclusiveness could be the result of a decision-making process that was free of retaliatory animus and easy to see how it reflects the precise retaliatory animus overtly expressed in the Fact Sheet.

---

[4] To drive home the point, the Executive Order carves out law enforcement employees *except* those working at the Bureau of Prisons, where Plaintiff AFGE represents all bargaining unit employees. Dkt. 15-47 ¶ 5.

Finally, Defendants advance the extraordinary proposition that Section 7103(b) permits the President to eliminate collective bargaining rights based on whether a union has engaged in speech and petitioning activity opposing the President's policies. On Defendants' theory, "national security" could be defined to mean "political fealty to the President," which is not only antithetical to the First Amendment but would upend the "system of government the First Amendment was intended [to] protect, a democratic system whose proper functioning is indispensably dependent on the unfettered judgment of each citizen on matters of political concern." *Elrod v. Burns*, 427 U.S. 347, 372 (1976). No matter how broad Defendants may claim the President's statutory authority is under § 7103(b), it could never encompass the power to punish private citizens for engaging in constitutionally-protected speech and petitioning activity.

The White House's own official explanation of the Executive Order demonstrates that it was targeted at federal unions who had engaged in First Amendment activity opposing the President's agenda. Thus, this Court correctly concluded that Plaintiffs have "demonstrated a serious question under the First Amendment that warrants preserving the status quo pending further litigation." Dkt. 60 at 22.

## II. Defendants Fail to Demonstrate Irreparable Harm Justifying a Stay

### A. Plaintiffs Sought, and Received, a Prohibitory Injunction

For the first time in this litigation, Defendants contend that Plaintiffs should have been required to meet a heightened standard to receive a mandatory preliminary injunction. Dkt. 63 at 5. But Defendants are mistaken. Plaintiffs were entitled to, and received, a prohibitory preliminary injunction that preserved the "last, uncontested status which preceded the pending controversy"—the status quo that existed prior to the issuance of the contested Exclusion Order. *See AFGE v. Noem*, No. 2:25-cv-451, 2025 WL 1557270, at *12 (E.D. Wash. June 2, 2025) (injunction restoring pre-litigation labor rights is prohibitory); *Doe v. Samuel Merritt Univ.*, 921 F.Supp.2d 958, 962-63 (N.D. Cal. 2013) (injunction restoring dismissed university student to pre-controversy enrolled status is prohibitory). Because this relief does not go "well beyond simply maintaining the status quo *pendente lite*," but instead simply restores the status quo, the heightened mandatory injunction standard raised by Defendants does not apply. *Doe*, 921 F.Supp.2d at 962-63.

**B. Defendants' Attempts to Show Irreparable Harm Are Speculative at Best**

To obtain a stay, the government must make a "threshold showing" of irreparable harm, "regardless of [its] proof regarding the other stay factors." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). The government must show that "irreparable harm is probable, not merely possible." *Id.* at 1059. It cannot meet that burden "by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Id.* at 1059-60.

Here, Defendants argue that they are irreparably harmed because the injunction "encroach[es] on the President's prerogatives" and therefore "undermines Executive Branch constitutional governance." Dkt. 63 at 4-5. But as the Ninth Circuit has repeatedly held, that sort of "institutional injury" does not itself constitute irreparable harm to the government. *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) ("[I]t is the resolution of the case on the merits, not whether the injunction is stayed pending appeal, that will affect those principles."); *see also Doe #1*, 957 F.3d at 1059 (9th Cir. 2020); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018). Rather, to show irreparable harm, the government must point to specific evidence that a temporary return to the pre-order status quo will have a "significant impact" on agencies' ability to safeguard our national security. *Sierra Club v. Trump*, 929 F.3d 670, 705 (9th Cir. 2019) (declining, absent evidence of harm, to stay an injunction pausing construction of the border wall); *Washington*, 847 F.3d at 1168 (declining to stay an injunction pausing an executive order restricting immigration); *contrast Newsom v. Trump*, No. 25-3727, 2025 WL 1712930, at *14 (9th Cir. June 19, 2025) (granting a stay based on contemporaneous evidence of specific incidents of violence to federal officers and property).

Defendants do not come close to carrying that burden. After taking the position at the preliminary injunction stage that Plaintiffs were not suffering harm because most agencies were not implementing the Executive Order, Defendants do an about face and argue that the injunction should be stayed because *Defendants* are suffering irreparable harm given the extensive steps taken to implement the Executive Order. Now Defendants proffer twenty-three newly obtained declarations from various government officials—after submitting no evidence at all at the

preliminary injunction stage—claiming alleged harm to the government from the injunction.[5] These late-breaking attempts to show "harm" from engaging with unions pursuant to Chapter 71— as has occurred in many affected agencies and subdivisions for decades—fall short. Defendants submit declarations claiming that restoring the status quo will cause some administrative burden such as additional payroll processing and paperwork. *See, e.g.*, Dkt. 63-22 ¶ 5(b)–(f); Dkt. 63-7 ¶ 5(b); Dkt. 63-20 ¶ 5(c). But "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough" for a stay. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020).

And Defendants' attempt to show purported harm to national security by complying with the preliminary injunction is both conclusory and wildly speculative. For example, Declarant Lew Olowski (State Dept.) suggests that the injunction "*risks* slowing down the Secretary's resource allocation decisions," and speculates that "*if* as a consequence of meddling by labor unions like the Plaintiffs the Secretary is delayed or prevented from" moving employees between offices, "American citizens will suffer irreparable harms to their physical safety." Dkt. 63-3 ¶ 5(b) (emphases added). As an example, Mr. Olowski states that the State Department recently facilitated emergency flights "to bring Americans home who might otherwise have been killed by an Iranian missile or a Palestinian terrorist," but offers no explanation as to why restoring labor protections that have existed for decades would impede such an operation. *Id.*; *see* 5 U.S.C. § 7106(a)(2)(D) (Chapter 71 management right "to take whatever actions may be necessary to carry out the agency mission during emergencies"). Likewise, Declarant Christina Ballance (HHS) states summarily that "operational and strategic capacities . . . will be seriously impacted" by the injunction, referring to unidentified "roadblocks" that "*may* delay program execution . . . ." Dkt. 63-9 ¶ 6(b) (emphasis added). She points to the importance of "swift evaluation and approval of vaccines and treatments during emergencies, like the COVID-19 pandemic," but never explains how restoring the exact labor relations system present during the COVID-19 pandemic would

---

[5] These declarations are Exs. 2-24 to Defendants' motion. Ex. 1 appears to be a demonstrative exhibit that includes assertions contradicted by Defendants' own declarations, *see* § II.C *infra*, as well as uncontested evidence in the preliminary injunction record. *See* Dkt. 47 at 18-19.

interfere with another swift response. *Id.* at ¶ 6(c).[6]

The government's failure to put forward specific evidence of harm is even more notable considering that several Defendants in this case were previously enjoined from enforcing Executive Order 14251 while the D.C. Circuit decided a motion for stay pending appeal. In *NTEU v. Trump*, the District Court for the District of Columbia granted a preliminary injunction restoring the pre-EO labor relations status quo for Defendants OPM, DOJ, HHS, Energy, EPA, and Treasury on April 25, 2025. Order, *NTEU v. Trump*, No. 1:25-cv-00935 (D.D.C. Apr. 25, 2025), Dkt. 32. As Defendants note, the D.C. Circuit granted a stay pending appeal on May 16, 2025, but nowhere in Defendants' declarations is any instance of alleged irreparable harm that occurred during the time the preliminary injunction remained in effect. *See* Dkt. 63-2 (OPM); Dkt. 63-6 (Treasury (U.S. Mint)); Dkt. 63-8 (DOJ); Dkt. 63-9 (HHS); Dkt. 63-14 (Energy); Dkt. 63-17 (EPA).

### C. This Court Correctly Held That Plaintiffs Face Irreparable Harm in the Absence of an Injunction

Incredibly, after submitting numerous declarations admitting that agencies are implementing the Exclusion Order (as Plaintiffs have contended from the start of this litigation), Defendants proceed to ignore that evidence and reprise their argument that Plaintiffs' harms "regarding loss of bargaining rights" are "speculative," and that any harm for unions "would materialize only *after* an agency terminates a collective-bargaining agreement." Dkt. 63 at 7 (citing *NTEU v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (en banc petition pending)). Defendants' position requires turning a blind eye to both binding Ninth Circuit precedent and the extensive factual evidence in the record. Dkt. 60 at 22-25.

As an initial matter, Defendants do not meaningfully contest the Court's well-supported findings that Plaintiffs face a "threat of extinction" in the absence of an injunction. *See id.* at 22-

---

[6] As the Court is aware, the framework set forth in Chapter 71 of Title 5 is designed to meet "the special requirements and needs of the Government," 5 U.S.C. § 7101(b), providing a "restricted scope of bargaining" that "excludes from negotiations a host of subjects that employers would be obliged to bargain about in the private sector" and "gives federal agencies great flexibility in collective bargaining," *NTEU v. Chertoff*, 452 F.3d 839, 860-61 (D.C. Cir. 2006) (internal quotations omitted). The statute includes a broad management rights provision that, *inter alia*, protects agencies' rights to "take whatever actions may be necessary to carry out the agency mission during emergencies." 5 U.S.C. § 7106. And it is further tailored such that bargaining units may not include "any employee engaged in intelligence, counterintelligence, investigative, or security work which directly affects national security." *Id.* § 7112(b)(6).

23 (cleaned up). Moreover, Defendants' *own evidence* shows that Plaintiffs had lost statutory and contractual rights before this Court granted preliminary relief, even if Defendants insist that they were merely ignoring CBAs instead of formally "terminating" them. Row after row of Defendants' "Exhibit 1" asserts that the relevant agency has not *formally* terminated its CBAs, while at the same time admitting that it has stopped allotting dues, granting official time, and/or processing grievances—all of which are binding terms of the CBAs. It is simply not credible to simultaneously claim that an agency is harmed because this Court's preliminary injunction "requires ICE to comply with certain CBAs," Dkt. 63 at 6, while insisting that a Plaintiff Union suffers no harm until an agency officially decrees that a CBA is "terminated."[7]

Similarly, Defendants represent that all Defendant agencies but one still "recognize unions as exclusive reps." Dkt. 63-1. But the record shows that those same agencies are refusing to negotiate with unions, respond to information requests, bargain over changes to the conditions of employment, or include union representatives in disciplinary meetings. *See, e.g.*, Dkt. 47-3 ¶ 9; Dkt. 47-4 ¶¶ 11-13; Dkt. 47-9 ¶ 8; Dkt. 63-2 ¶ 5(b);[8] Dkt. 63-12 ¶ 6(c), (d).[9] Indeed, at least two of the government's own declarations describe unilaterally removing members from a bargaining unit, which directly contradicts the agency's position that it still recognizes the union as the representative of those employees. Dkt. 63-2 ¶ 4 n.2; Dkt. 63-22 ¶¶ 4-5. Semantic word games cannot alter the facts on the ground. The Court correctly found that, in the absence of the injunction, Plaintiffs will be irreparably harmed by the loss of their collective bargaining rights

---

[7] Defendants submit a declaration stating that the Animal and Plant Health Inspection Service rescinded a notice sent to Plaintiff NFFE that its CBA was no longer in effect. Dkt. 63-15 ¶ 4(a); Dkt. 63-16. In fact, subsequent to the "rescission" of this notice, the agency has continued to treat the CBA as no longer in effect and has declared that "all labor obligations are in abeyance" as a result of the Executive Order. *See* Perez-Baum Decl., ¶¶ 5-9.

[8] Declarant Carmen Garcia-Whiteside states that OPM has conducted reductions-in-force in "OPM organizations previously represented by the union" without notifying or bargaining with the union about those changes. Dkt. 63-2 ¶ 5(b).

[9] Declarant Meir Braunstein avers that ICE is harmed by compliance with the injunction because the restoration of the status quo requires ICE to again bargain over changes in working conditions and respond to information requests. Dkt. 63-12 ¶ 6(c), (d). It is unclear how to square the admission that ICE was not honoring statutory rights of exclusive representatives with the statement that ICE has not "refused to recognize unions as exclusive rep[resentative]s." *Id.* ¶ 5.

during the pendency of litigation. Dkt. 60, at 22 (citing *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1192 (9th Cir. 2011)).

One final point: Defendants cite to the decision of the D.C. Circuit motion panel in *NTEU*, which granted a motion for a stay enjoining the same executive order. That decision is inapposite for two reasons. First, the injunction at issue in *NTEU* was not based on a First Amendment violation, and thus the D.C. Circuit motion panel did not consider the harmful chilling effects on speech that this Court noted were present here. *See* Dkt. 60, at 18-19. Second, as Defendants' newly proffered evidence amply demonstrates, the panel majority's decision was based on a misunderstanding of the facts that is squarely refuted by the record here. The *NTEU* panel found that the union would not suffer irreparable harm absent an injunction because the government had already "voluntarily imposed" limits upon itself such that the EO was "already-paused" absent the preliminary injunction. *NTEU*, 2025 WL 1441563, at *1 n.2. Here, Defendants' stay motion is premised on the opposite contention—that the EO has been implemented so substantially that the government would be harmed from having to "return their workplaces to their pre-Executive Order status." Dkt. 63 at 6.[10]

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' emergency motion for a stay pending appeal.

Dated: July 7, 2025

Respectfully submitted,

/s/ Ramya Ravindran
Leon Dayan (SBN 153162)

| | |
|---|---|
| Daniel Feinberg, SBN 135983 | Abigail V. Carter* |
| Catha Worthman, SBN 230399 | Ramya Ravindran* |
| FEINBERG, JACKSON, WORTHMAN | Lane M. Shadgett* |
| & WASOW, LLP | J. Alexander Rowell* |
| 2030 Addison Street, Suite 500 | BREDHOFF & KAISER P.L.L.C. |
| Berkeley, CA 94704 | 805 Fifteenth Street NW, Suite 1000 |
| Tel. (510) 269-7998 | Washington, D.C. 20005 |
| Fax (510) 269-7994 | Tel: (202) 842-2600 |
| dan@feinbergjackson.com | Fax: (202) 842-1888 |

---

[10] That contradiction has not gone unnoticed. On July 2, NTEU filed a 28(j) notice in support of its *en banc* petition, attaching the government's motion here as evidence that the motions panel's decision was based on a misapprehension of the facts. *See NTEU v. Trump*, No. 25-5157 (D.C. Cir. July 2, 2025), Doc. #2123529.

| | |
|---|---|
| catha@feinbergjackson.com | ldayan@bredhoff.com |
| | acarter@bredhoff.com |
| *Counsel for Plaintiffs* | rravindran@bredhoff.com |
| | lshadgett@bredhoff.com |
| Rushab B. Sanghvi (SBN 302809) | arowell@bredhoff.com |
| Andres M. Grajales* | *Pro hac vice* |
| American Federation of Government Employees, AFL-CIO | *Counsel for Plaintiffs* |
| 80 F Street NW | |
| Washington, D.C. 20001 | |
| Tel: (202) 639-6426 | Teague P. Paterson (SBN 226659) |
| SanghR@afge.org | Matthew S. Blumin* |
| Grajaa@afge.org | American Federation of State, County, and Municipal Employees, AFL-CIO |
| *Pro hac vice* | 1625 L Street NW |
| | Washington, D.C. 20036 |
| *Counsel for Plaintiff American Federation of Government Employees (AFGE)* | Tel: (202) 775-5900 |
| | Fax: (202) 452-0556 |
| Nicole Daro (SBN 276948) | tpaterson@afscme.org |
| National Nurses United | mblumin@afscme.org |
| 155 Grand Ave. | *Pro hac vice* |
| Oakland, CA 94612 | |
| Tel: (510) 207-8291 | *Counsel for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)* |
| ndaro@calnurses.org | |
| *Counsel for Plaintiff NNOC/NNU* | |
| | Steven K. Ury (SBN 199499) |
| Sarah E. Suszczyk* | Service Employees International Union, AFL-CIO |
| National Association of Government Employees, Inc. | 1800 Massachusetts Ave., N.W. |
| 159 Thomas Burgin Parkway | Washington, D.C. 20036 |
| Quincy, MA 02169 | Tel: (202) 730-7428 |
| Tel: (617) 376-7239 | steven.ury@seiu.org |
| ssuszczyk@nage.org | |
| *Pro hac vice* | *Counsel for Plaintiff Service Employees International Union, AFL-CIO (SEIU)* |
| *Counsel For Plaintiff National Association of Government Employees (NAGE)* | |
| | Yvette M. Piacsek* |
| | General Counsel |
| | National Federation of Federal Employees, IAM, AFL-CIO |
| | 1225 New York Avenue NW, Suite 450 |
| | Washington, D.C. 20005 |
| | Tel: (202) 216-4428 |
| | ypiacsek@nffe.org |
| | *Pro hac vice* |

*Counsel for Plaintiff National Federation of Federal Employees, IAM, AFL-CIO (NFFE)*