BRETT A. SHUMATE
Assistant Attorney General
TYLER BECKER
Counsel to the Assistant Attorney General, Civil Division
ALEXANDER K. HAAS
Director
CHRISTOPHER R. HALL
Assistant Branch Director
BENJAMIN S. KURLAND
D.C. Bar No. 1617521
JEREMY MAURITZEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 598-7755
Fax: (202) 616-8470
Email: ben.kurland@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-03070-JD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Judge: Hon. James Donato<br><br>Date: December 17, 2026<br>Time: 10:00 a.m.<br>Courtroom: 11<br>Trial Date: None set |

# TABLE OF CONTENTS


INTRODUCTION ....... 1

STATUTORY AND REGULATORY BACKGROUND ....... 1

STATEMENT OF RELEVANT FACTS ....... 2

PROCEDURAL HISTORY ....... 3

LEGAL STANDARDS ....... 3

ARGUMENT ....... 4

I. The FSLMRS Precludes District Court Jurisdiction over Plaintiffs' Claims ....... 4

II. Plaintiffs Fail to State a Viable Claim for Relief ....... 5

A. Plaintiffs' *Ultra Vires* Claim Should Be Dismissed ....... 5

1. Plaintiffs cannot challenge the President's discretionary determinations ....... 5

2. The President's determinations are facially valid and not subject to review ....... 6

3. Plaintiffs fail to plead a valid *ultra vires* claim ....... 9

4. Plaintiffs cannot avoid FSLMRS channeling by bringing an *ultra vires* claim ....... 11

B. Plaintiffs' First Amendment Claims Fail Against a Facially Neutral Executive Order ....... 11

C. Plaintiffs' Fifth Amendment Claims Fail ....... 13

CONCLUSION ....... 15

# TABLE OF AUTHORITIES

## Cases

*AFGE v. Reagan*,
870 F.2d 723 (D.C. Cir. 1989) ........ 7

*AFGE v. Trump* ("*AFGE I*"),
148 F.4th 648 (9th Cir. 2025), *vacated by* 167 F.4th 1247 (9th Cir.), *amended by AFGE II*, 178 F.4th 456 (9th Cir. 2026) ........ 3, 13

*AFGE v. Trump*,
929 F.3d 748 (D.C. Cir. 2019) ........ 4

*Air Line Emps. Ass'n, Int'l. v. Nat'l Mediation Bd.*,
1981 WL 2391 (D.D.C. May 18, 1981) ........ 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* ("*AFGE II*"),
178 F.4th 456 (9th Cir. 2026) ........ *passim*

*Am. Foreign Serv. Ass'n v. Trump*,
No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) ........ 4, 5

*AMERCO v. NLRB*,
458 F.3d 883 (9th Cir. 2006) ........ 11

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ........ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Axon Enterprise, Inc. v. Federal Trade Commission*,
598 U.S. 175 (2023) ........ 5

*B.R. v. Garland*,
26 F.4th 827 (9th Cir. 2022) ........ 8

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) ........ 11

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ........ 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Bhd. of Ry. & S.S. Clerks v. Ass'n for Benefit of Non-cont. Emps.*,
380 U.S. 650 (1965) ........ 9

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) ........ 1

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ........ 11

*BP P.L.C. v. Mayor & City Council of Baltimore*,
593 U.S. 230 (2021) ........ 10

*Bureau of Alcohol, Tobacco and Firearms v. FLRA* ("*BATF*"),
464 U.S. 89 (1983) ........ 2

*Capp v. Cnty. of San Diego*,
940 F.3d 1046 (9th Cir. 2019) ........ 11

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
333 U.S. 103 (1948) ........ 9

*Christopher v. Harbury*,
536 U.S. 403 (2002) ........ 6

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 8

*Coggeshall Dev. Corp. v. Diamond*,
884 F.2d 1 (1st Cir. 1989) ........ 14

*Dakota Cent. Tel. Co. v. S.D. ex rel. Payne*,
250 U.S. 163 (1919) ........ 5

*Dalton v. Specter*,
511 U.S. 462 (1994) ........ 5, 6, 11

*DeBoer v. Pennington*,
206 F.3d 857 (9th Cir. 2000) , *vacated on other grounds*, 532 U.S. 992 (2001) *reinstated in relevant part*, 287 F.3d 748 (9th Cir. 2002) ........ 13

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 8

*Dep't of Def. v. FLRA*,
685 F.2d 641 (D.C. Cir. 1982) ........ 7

*Dep't of Navy v. Egan*,
484 U.S. 518 (1988) ........ 6

*Dudley v. Boise State Univ.*,
152 F.4th 981 (9th Cir. 2025) ........ 13

*Fed. Express Corp. v. Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) ........ 9

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ........ 13

*Gilligan v. Morgan*,
413 U.S. 1 (1973) ........ 9

*Griffith v. FLRA*,
842 F.2d 487 (D.C. Cir. 1988) ........ 9

*Hain Celestial Grp., Inc. v. Palmquist*,
607 U.S. 421 (2026) ........ 3

*Hartman v. Moore*,
547 U.S. 250 (2006) ........ 11

*Hodel v. Indiana*,
452 U.S. 314 (1981) ........ 15

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ........ 7, 8, 9

*Hughes Commc'ns Galaxy, Inc. v. United States*,
271 F.3d 1060 (Fed. Cir. 2001) ........ 14

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018) ........ 12

*Int'l Bhd. of Teamsters v. Bhd. of Ry., Airline and S.S. Clerks*,
402 F.2d 196 (D.C. Cir. 1968) ........ 7

*Jackson v. Chappel,*
No. 14-3108 CRB (PR), 2017 WL 57304 (N.D. Cal. Jan. 5, 2017) ........ 11

*Kempe's Lessee v. Kennedy*,
9 U.S. (5 Cranch) 173 (1809) ........ 3

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ........ 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ........ 3

*Local 1498, AFGE v. AFGE, AFL/CIO*,
522 F.2d 486 (3d Cir. 1975) ........ 2

*Lynch v. United States*,
292 U.S. 571 (1934) ... 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ... 4

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977) ... 3, 12

*Murphy Co. v. Biden*,
65 F.4th 1122 (9th Cir. 2023) ... 10

*Myers v. United States*,
272 U.S. 52 (1926) ... 1

*N. Am. Butterfly Ass'n v. Wolf*,
977 F.3d 1244 (D.C. Cir. 2020) ... 9

*N. Star Alaska v. United States*,
14 F.3d 36 (9th Cir. 1994) ... 14

*Nat'l Treasury Emps. Union v. Reagan*,
No. 80-606, 1981 WL 150530 (D.D.C. Sep. 3, 1981) ... 7

*Nat'l Treasury Emps. Union v. Trump*,
No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ... 4

*Newsom v. Trump*,
--- F.4th ---, 2026 WL 3180273 (9th Cir. Oct. 23, 2026) ... 10

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ... 10

*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) ... 9

*Nyunt v. Chairman, Broad. Bd. of Governors*,
589 F.3d 445 (D.C. Cir. 2009) ... 9

*O'Brien v. Welty*,
818 F.3d 920 (9th Cir. 2016) ... 11

*Olson v. California*,
104 F.4th 66 (9th Cir.), *cert. denied*, 145 S. Ct. 382 (2024) ... 15

*Pratt v. Rowland*,
65 F.3d 802 (9th Cir. 1995) ... 11

*QueerDoc, PLLC v. Dep't of Just.*,
187 F.4th 1112 (9th Cir. 2026) ..... 8

*Rostker v. Goldberg*,
453 U.S. 57 (1981) ..... 7

*San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*,
825 F.2d 1404 (9th Cir. 1987) ..... 13, 14

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ..... 4

*Thornton v. City of St. Helens*,
425 F.3d 1158 (9th Cir. 2005) ..... 13

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ..... 4

*Trump v. Hawaii*,
585 U.S. 667 (2018) ..... 7, 8, 9, 12

*Unger v. Nat'l Residents Matching Program*,
928 F.2d 1392 (3d Cir. 1991) ..... 13

*United States v. Chemical Found.*,
272 U.S. 1 (1926) ..... 8

*United States v. George S. Bush & Co.*,
310 U.S. 371 (1940) ..... 5

*Webster v. Doe*,
486 U.S. 592 (1988) ..... 6, 7

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ..... 6, 10, 11

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ..... 6, 12

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 ..... 1

**Statutes**

5 U.S.C. § 7101 ..... 1

5 U.S.C. § 7102 ..... 2

5 U.S.C. § 7103 ........ *passim*

5 U.S.C. § 7105 ........ 4

5 U.S.C. § 7106 ........ 2

5 U.S.C. § 7111 ........ 4, 5

5 U.S.C. § 7114 ........ 2

5 U.S.C. § 7116 ........ 4, 5

5 U.S.C. § 7118 ........ 4

5 U.S.C. § 7123 ........ 4

5 U.S.C. § 7121 ........ 5

15 U.S.C. § 634b ........ 9

Pub. Res. No. 38, 40 Stat. 904 (1918) (repealed 1919) ........ 6

**Rules**

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ........ viii

Local Rules 7-1 and 7-2 ........ viii

**Legislative Materials**

124 Cong. Rec. 29183(daily ed. Sep. 13, 1978) ........ 7

**Administrative and Executive Materials**

Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) ........ *passim*

**Other Authorities**

Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements (Mar. 27, 2025), https://perma.cc/W93G-Z889 ("Fact Sheet") ........ 2

Mem. from Charles Ezell, Acting Director, U.S. Office of Personnel Management, to Heads and Acting Heads of Departments and Agencies, Guidance on Executive Order (Mar. 27, 2025), https://perma.cc/QH4A-MQ9F ("OPM Guidance") ........ 3

U.S. Veteran Affairs & AFGE, 2023 Master Agreement (Aug. 8, 2023), https://perma.cc/W3NV-AX87 ........ 13

**NOTICE OF MOTION TO DISMISS**

PLEASE TAKE NOTICE that on December 17, 2026, at 10:00 a.m., in Courtroom 11, 19th Floor, of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Civil Local Rules 7-1 and 7-2 to dismiss Plaintiffs' claims against all Defendants as articulated in Plaintiffs' Complaint, ECF No. 1.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the proposed order and declaration supporting this Motion; the pleadings on file in this action; and any other matters properly before the Court.

**INTRODUCTION**

The Court should dismiss Plaintiffs' claims as the President lawfully exercised his statutory and constitutional authorities to exclude certain agencies and subagencies from the FSLMRS, 5 U.S.C. § 7101 *et seq.*, for national security and related statutory concerns. For starters, the Court lacks jurisdiction, as Plaintiffs' claims are channeled by the FSLMRS to the FLRA. Moreover, each fails to state a claim.

*First*, Plaintiffs' *ultra vires* claim (Count II) fails for four reasons: (1) Plaintiffs cannot bring an *ultra vires* claim challenging discretionary Presidential determinations authorized by statute; (2) the determinations are facially valid and cannot not be scrutinized; (3) the determinations are reasonable and cannot support a claim under the stringent *ultra vires* standard; and (4) *ultra vires* review is precluded where alternative forums—such as the FLRA—are available. *Second*, Plaintiffs' First Amendment claims (Count I) fail based on the Ninth Circuit's finding that the Executive Order at issue "discloses no retaliatory animus on its face" but "instead expresses that the President's primary—if not only—concern with union activity was its interference with national security, which is a judgment that § 7103(b)(1) at least presumptively entrusts to the Executive." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 178 F.4th 456, 467 (9th Cir. 2026) ("*AFGE II*"). Plaintiffs do not plausibly allege that a retaliatory motive was a substantial factor motivating the President's Executive Order or that the Order targets Plaintiffs based on their viewpoints. *Third*, Plaintiffs' Fifth Amendment claims (Counts III–V) also fail. They fail to allege a procedural due process violation as they plead no constitutionally protected property interest. In any event, their alleged "abrogation" of contractual rights claim is merely a breach of contract claim in constitutional garb. Finally, Plaintiffs' equal protection claim (if it does anything more than dress up their other claims) fails because the Order distinguishes between agencies and subdivisions, not people, and does so on a rational basis.

**STATUTORY AND REGULATORY BACKGROUND**

Article II of the Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. That power "necessarily encompasses 'general administrative control of those executing the laws,' throughout the Executive Branch of government." *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)). Accordingly, the President has long "regulate[d] labor relations

in the federal government and internal matters of unions representing federal government employees[]" by Executive Order. *Local 1498, AFGE v. AFGE, AFL/CIO*, 522 F.2d 486, 491 (3d Cir. 1975).

Since 1978, the FSLMRS has provided a "comprehensive . . . scheme governing labor relations[,]" *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 91 (1983), granting employees collective bargaining rights and requiring that unions and federal agencies negotiate over certain matters, 5 U.S.C. §§ 7102(2), 7106, 7114. But consistent with the President's Article II authority, the FSLMRS exempts certain agencies and matters from its coverage, 5 U.S.C. § 7103(a)(3), and recognizes that "[t]he President may issue an order excluding *any* agency or subdivision" after making two statuary determinations. *Id.* § 7103(b)(1) (emphasis added). Presidents have regularly exercised that authority.

**<u>STATEMENT OF RELEVANT FACTS</u>**

On March 27, 2025, President Trump issued an executive order excluding certain agencies and subagencies from FSLMRS coverage because they have "as a primary function intelligence, counterintelligence, investigative, or national security work," and explaining that the FSLMRS thus "cannot be applied to [them] in a manner consistent with national security requirements and considerations." *See* Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) §§ 1–2 ("Executive Order"); Compl. ¶ 111. The White House Press Office published an accompanying "Fact Sheet" explaining that this action was taken "to ensure that agencies vital to national security can execute their missions without delay and protect the American people." *See* Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements (Mar. 27, 2025), https://perma.cc/W93G-Z889 ("Fact Sheet"); Compl. ¶ 135. The Fact Sheet outlines critical fields to the Nation's security—for example, national defense, energy security, and pandemic preparedness, prevention, and response—and describes how the exempted agencies are involved in national security functions in those fields. *See* Fact Sheet. It also explained how collective bargaining impedes those functions, including by preventing agencies from modifying policies or contractual terms to facilitate national security imperatives. *Id.*

The same day, the Office of Personnel Management ("OPM") issued guidance explaining that "covered agencies and subdivisions are no longer subject to the collective-bargaining requirements" of the FSLMRS. Mem. from Charles Ezell, Acting Director, U.S. Office of Personnel Management, to Heads

and Acting Heads of Departments and Agencies, Guidance on Executive Order at 3 (Mar. 27, 2025), https://perma.cc/QH4A-MQ9F ("OPM Guidance"); Compl. ¶ 124. OPM expressed the Administration's legal position that under a lawful implementation of the President's Executive Order, covered agencies would be "no longer required to collectively bargain with Federal unions" and that "the statutory authority underlying the original recognition of the relevant unions no longer applies." *Id.* OPM directed covered agencies to implement changes "consistent with the President's national security determination." *Id.*

## PROCEDURAL HISTORY

Plaintiffs sued on April 3, 2025, alleging in five causes of action that the Executive Order: (I) retaliates and discriminates based on viewpoint in violation of the First Amendment; (II) is *ultra vires* as exceeding the President's authority under Chapter 71 of Title 5 and the separation of powers; (III) violates the Due Process Clause of the Fifth Amendment; (IV) abrogates Plaintiffs' property rights in their CBAs in violation of the Fifth Amendment; and (V) violates the equal protection component of the Fifth Amendment. Compl. ¶¶ 211–51, ECF No. 1. Plaintiffs ask the Court to (1) declare that the Executive Order and accompanying Fact Sheet, OPM Guidance, and any ensuing CBA terminations are *ultra vires* and (2) enjoin all Defendants, including the President, from implementing the Executive Order. *Id.* at 41.

On June 24, 2025, the Court issued a preliminary injunction on only one claim. Order Re Prelim. Inj., ECF No. 60 ("PI Order"). The Ninth Circuit stayed that injunction, *AFGE v. Trump*, 148 F.4th 648 (9th Cir. 2025) ("*AFGE I*"), and later vacated it, *AFGE v. Trump*, 167 F.4th 1247 (9th Cir. 2026); *amended by AFGE II*, 178 F.4th 456 (9th Cir. 2026). The Ninth Circuit held that Plaintiffs had not shown a likelihood of success, or serious questions going to the merits, on their retaliation claim because Defendants established that "the President would have taken the same action even in the absence of the protected conduct." *AFGE II*, 178 F.4th at 466 (quoting *AFGE I*, 148 F.4th at 654–55 and referencing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

## LEGAL STANDARDS

"Federal courts 'are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them.'" *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 428 (2026) (quoting *Kempe's Lessee v. Kennedy*, 9 U.S. (5 Cranch) 173, 185 (1809)). Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994). Even if Plaintiffs establish jurisdiction, the Court must dismiss their complaint under Rule 12(b)(6) if it fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Under Rule 12(b)(6), courts accept factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. The FSLMRS Precludes District Court Jurisdiction over Plaintiffs' Claims

This Court lacks jurisdiction over Plaintiffs' claims under the FSLMRS's exclusive scheme: administrative review before the FLRA, followed by direct review in a court of appeals. *See* 5 U.S.C. §§ 7105(a); 7111(b)(2); 7116(a)(8); 7118(a); 7123(a); *see also AFGE v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019); *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *1–2 (D.C. Cir. May 16, 2025) (per curiam); *Am. Foreign Serv. Ass'n v. Trump*, No. 25-5184, 2025 WL 1742853, at *1–2 (D.C. Cir. June 20, 2025) (per curiam) ("*AFSA* Stay Order"). As Defendants have argued, Plaintiffs must press their claims before the FLRA not the District Court. Defs.' Opp'n to Pls.' *Ex Parte* Mot. for Prelim. Inj. and Order to Show Cause at 9–12, ECF No. 44. Defendants recognize that the Ninth Circuit preliminarily rejected this argument during the preliminary-injunction appeal. *See AFGE II*, 178 F.4th at 465. Defendants respectfully maintain that conclusion was incorrect. The question under channeling is whether plaintiffs' "*claims* are of the type Congress intended to be reviewed within this statutory structure," not whether the underlying action is. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) (emphasis added). The Executive Order may exclude agencies from FSLMRS coverage, but for channeling purposes, Plaintiffs' *claims* assert that the agencies are covered, including on the theory that the President has not validly invoked a provision *of the FSLMRS*, 5 U.S.C. § 7103(b)(1). As with all other claims under the FSLMRS, such a claim must proceed through the FLRA under the FSLMRS. Claims that an agency is

covered by the FSLMRS are meant to be tested within the FSLMRS's review scheme through, for example, an unfair labor practice charge that an excluded agency refused to consult or negotiate in good faith with a labor organization, 5 U.S.C. § 7116, a grievance-arbitration process that is required to be part of every collective-bargaining agreement, *id.* § 7121, or a unit-clarification petition, *id.* § 7111(b)(2). Nor do Plaintiffs' claims resemble the structural separation-of-powers challenges that the Supreme Court allowed to proceed in district court in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023). Plaintiffs' claims are not "collateral" to the FSLMRS; they turn on the scope and application of § 7103(b)(1), a provision the FLRA has expertise in construing, and meaningful judicial review remains available in the court of appeals. *See id.* at 186, 192–95.

## II. Plaintiffs Fail to State a Viable Claim for Relief

### A. Plaintiffs' *Ultra Vires* Claim Should Be Dismissed

#### 1. Plaintiffs cannot challenge the President's discretionary determinations

The President's § 7103(b)(1) determinations are discretionary, entrusted to him by Congress, and thus not subject to *ultra vires* review. The Supreme Court has assumed without deciding that some *ultra vires* claims that the President violated a statutory mandate are judicially reviewable. *Dalton v. Specter*, 511 U.S. 462, 474 (1994). But such review is not available where the statute "commits the decision to the discretion of the President." *Id.*; *see also AFSA* Stay Order, 2025 WL 1742853, at *2. Where a claim alleges "a mere excess or abuse of discretion in exerting a power given," it involves "considerations which are beyond the reach of judicial power" and "the judicial may not invade the legislative or executive departments[.]" *Dalton*, 511 U.S. at 474 (quoting *Dakota Cent. Tel. Co. v. S.D. ex rel. Payne*, 250 U.S. 163, 184 (1919)). In *Dalton*, the Supreme Court refused to review the President's decision to approve a Commission's recommendation to close military bases as the statute did "not at all limit the President's discretion in approving or disapproving the Commission's recommendations[.]" *Id.* at 476; *see also United States v. George S. Bush & Co.*, 310 U.S. 371, 379–80 (1940) (President's decision "no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment").

Similarly unreviewable was the Presidential action in *Dakota Central Telephone Co. v. South Dakota ex rel. Payne*, taken under a joint resolution authorizing "the President during the continuance of the present war . . . whenever he shall deem it necessary for the national security or defense, to supervise

or to take possession and assume control of any . . . telephone [lines]." 250 U.S. 163, 181 (1919) (quoting Pub. Res. No. 38, 40 Stat. 904 (1918) (repealed 1919)). The Supreme Court refused to consider a claim that the President abused his discretion because "it involve[d] considerations which are beyond the reach of judicial power." *Id.* at 184. Significantly, the Court did consider, yet ultimately rejected, an argument "that there was an absence of power in the President" to take the action that he did. *Id.*

Here, the FSLMRS grants the President broad, unreviewable discretion to make exclusions from the FSLMRS when he determines it is necessary for the national security. 5 U.S.C. § 7103(b)(1). The statute "fairly exudes deference" to the President "and appears . . . to foreclose the application of any meaningful judicial standard of review." *Webster v. Doe*, 486 U.S. 592, 600 (1988). "How the President chooses to exercise the discretion Congress has granted him" is thus "not a matter for [a court's] review." *Dalton*, 511 U.S. at 476. This is especially so given the provision's national security focus. "National-security policy is the prerogative of the Congress and President," and "[j]udicial inquiry into the national-security realm raises 'concerns for the separation of powers.'" *Ziglar v. Abbasi,* 582 U.S. 120, 142 (2017) (quoting *Christopher v. Harbury*, 536 U.S. 403, 417 (2002)). Courts are "reluctant to intrude upon" an exercise of national-security authority "unless 'Congress specifically has provided otherwise,'" *Ziglar*, 582 U.S. at 143 (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)), and a non-statutory *ultra vires* claim necessarily lacks congressional authorization. Plaintiffs therefore lack a cause of action to challenge the President's exercise of discretion vested in him by the FSLMRS.

**2. The President's determinations are facially valid and not subject to review**

Even were *ultra vires* review available, the President's determinations are facially valid and not subject to further scrutiny. Executive Order 14,251 represents the President's exercise of his authority under 5 U.S.C. § 7103(b)(1) to exclude agencies or subdivisions from Chapter 71, which provides that the President may issue an exclusion order so long as he determines that the agency or subdivision has "as a primary function intelligence, counterintelligence, investigative, or national security work," and the FSLMRS cannot be applied "in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1). As the Executive Order makes plain, the President made both determinations which Congress vested the exclusive authority in him to do. *Cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). Courts lack authority to second-guess

that determination.

A district court decades ago affirmed that a § 7103(b)(1) exclusion by President Carter was "not reviewable" because "Congress intended the chief executive to act 'in his or her sole discretion'" under § 7103(b)(1). *Nat'l Treasury Emps. Union v. Reagan*, No. 80-606, 1981 WL 150530, at *2 (D.D.C. Sep. 3, 1981) (quoting 124 Cong. Rec. 29183 (daily ed. Sep. 13, 1978)). The court concluded that "Congress granted the President complete discretion in determining the agencies to be excluded from the labor relations provisions," *id.*, leaving judicial review available only in "instances of constitutional dimension or gross violation of the statute[,]" *id.* at *2–3 (quoting *Int'l Bhd. of Teamsters v. Bhd. of Ry., Airline and S.S. Clerks*, 402 F.2d 196, 205 (D.C. Cir. 1968)).[1] The D.C. Circuit echoed that conclusion, observing that "Section 7103(b)(1) makes clear that the President may exclude an agency from the Act's coverage whenever he 'determines' that the conditions statutorily specified exist." *AFGE v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989). Others may not "arrogate" the President's "power in this regard;" § 7103(b)(1) "is for the President alone to invoke." *Dep't of Def. v. FLRA*, 685 F.2d 641, 650 (D.C. Cir. 1982).

The President need not "insert written findings into an exempting order[]" under § 7103(b)(1). *Reagan*, 870 F.2d at 727. If the President's order can be sustained without *any* findings, the statute surely does not permit second-guessing of written findings. Any other conclusion would be flatly inconsistent with the deference due to the President's national security-related determinations. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 686 (2018); *Webster*, 486 U.S. at 600. "[W]hen it comes to collecting evidence and drawing factual inferences" on national security questions, "the lack of competence on the part of the courts is marked," and judicial review of those determinations is thus sharply constrained. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (quoting *Rostker v. Goldberg*, 453 U.S. 57, 65 (1981)).

The President's determination under the second prong—whether Chapter 71's provisions "cannot be applied . . . in a manner consistent with national security requirements and considerations," 5 U.S.C. § 7103(b)(1)(B)—is especially ill-suited to judicial second guessing. When the President adopts "a preventive measure . . . in the context of . . . national security," he is "not required to conclusively link all

---

[1] *Reagan* suggested that this exception *may* exist but did not apply it. In other contexts, courts suggest that when judicial review is available only for "gross violations," that "narrow" exception applies only where the action is "plainly beyond the [statute's] bounds[.]" *Air Line Emps. Ass'n, Int'l. v. Nat'l Mediation Bd.*, 1981 WL 2391, at *1–3 (D.D.C. May 18, 1981). That case is not presented here.

[of] the pieces in the puzzle before [courts] grant weight to [his] empirical conclusions." *Holder*, 561 U.S. at 35. Scrutinizing "national security requirements and considerations" is not a task for which courts are well-equipped. 5 U.S.C. § 7103(b)(1)(B); *see Holder*, 561 U.S. at 34 ("the lack of competence on the part of the courts is marked" (citation omitted)). Rather, the President is entitled to reach national security-based findings before the national security is jeopardized.

Consequently, any remaining role for judicial review must be limited to instances where Plaintiffs can overcome the presumption of regularity with "clear evidence." *B.R. v. Garland*, 26 F.4th 827, 836 (9th Cir. 2022). Facially valid executive actions—those within the Executive's lawful authority—are entitled to a presumption of regularity, which "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Found.*, 272 U.S. 1, 14–15 (1926). Indeed, "judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977)). Overcoming the presumption requires a "strong showing of bad faith or improper behavior." *Id.* at 781 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)); *see also QueerDoc, PLLC v. Dep't of Just.*, 187 F.4th 1112, 1140 (9th Cir. 2026) (Courts "should not . . . infer[] . . . bad faith from political advocacy statements made by government officials.").

As described above, the Executive Order is facially valid and made the necessary determinations. Recognizing this, Plaintiffs instead ask this Court to infer bad faith or improper behavior based on the breadth of the Executive Order, the OPM Guidance, and the Fact Sheet. Compl. ¶¶ 223–32. But as the Ninth Circuit recognized, the Fact Sheet and OPM Guidance make plain that the Executive Order "has 'a legitimate grounding in national security concerns, quite apart from any'" retaliatory animus. *AFGE II*, 178 F.4th at 467–68 (quoting *Hawaii*, 585 U.S. at 706). Plaintiffs also allege that the President's determination is suspect because the specified agencies operated under the FSLMRS prior to the Executive Order. Compl. ¶¶ 225, 229. But the President could reasonably determine that relevant facts have changed in the nearly half-century since the FSLMRS was passed and bare allegations that the President established an "overbroad" policy does not permit courts to "substitute [their] own assessment for the Executive's

predictive judgments on such matters, all of which 'are delicate, complex, and involve large elements of prophecy.'" *Hawaii*, 585 U.S. at 707–08 (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948)). No allegations here overcome the presumption of regularity.

**3. Plaintiffs fail to plead a valid *ultra vires* claim**

Even if reviewable, Plaintiffs fail to sufficiently allege an *ultra vires* claim, which are "essentially a Hail Mary pass[.]" *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). A plaintiff must meet a heightened standard "confined to 'extreme'" errors. *See Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 763–64 (D.C. Cir. 2022) (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)). Plaintiffs must allege the President took action "'in excess of [his] delegated powers and contrary to a *specific prohibition*' in a statute." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (quoting *Bhd. of Ry. & S.S. Clerks v. Ass'n for Benefit of Non-cont. Emps.*, 380 U.S. 650, 660 (1965)). An *ultra vires* claim requires a violation of a "specific prohibition in the statute that is clear and mandatory," one "obviously beyond the terms of the statute," or "far outside the scope of the task that Congress gave it." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1263 (D.C. Cir. 2020) (citations modified).

Here, the President reasonably determined that the covered agencies have the necessary functions. Congress recognizes that agencies can have multiple primary functions, *see, e.g.*, 15 U.S.C. § 634b (listing 12 "primary functions"), meaning that an agency could fall within § 7103(b)(1)(A) even if it does not exclusively perform such functions. Plaintiffs' complaint fails to allege that any specific agency or subdivision excluded does not meet the statutory standard and instead complains the order is "overbroad" in general, *see* Compl. ¶ 228, and, therefore, fails to allege a specific *ultra vires* act.

Plaintiffs allege that the President erred in determining that the FSLMRS cannot be applied to the agencies because they have previously operated within its framework. Compl. ¶¶ 225, 229. But in response to different national-security requirements and considerations and applying different "informed judgment[s]," *Holder*, 561 U.S. at 34, different Presidents can make different determinations. That the President has done so here reflects evolving national security considerations. Indeed, providing for national security involves "complex[,] subtle, and professional decisions as to the composition, training, equipping, and control" of the workforce performing investigations, intelligence and national security tasks. *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). The President concluded that CBAs that impede or

prevent agencies from separating underperforming employees, dictate the place or conditions of work, or impair the Executive Branch's ability to react to rapid developments are inconsistent with national security, a finding that comes nowhere near the extreme error necessary for an *ultra vires* claim.

Plaintiffs also allege that the Executive Order is *ultra vires* based on alleged overbreadth compared to prior exclusion orders. Compl. ¶¶ 225–28. But the FSLMRS's "[e]xceptions and exemptions are no less part of Congress's work than its rules and standards—and all are worthy of a court's respect." *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 239 (2021). Although Congress found that collective bargaining in the civil service would generally be in the public interest, it also recognized that evolving national security considerations may outweigh such benefits. The Executive Order comports with Congress's judgment that the President is best positioned to make these determinations, and Congress placed no limit of the percentage of workforce that can be exempted. As the Ninth Circuit observed, "[t]here are various reasons why a President, when exercising national security authority under § 7103(b)(1), might include some agencies and subdivisions but not others in an Executive Order like this." *AFGE II*, 178 F.4th at 468. Without identifying any clear and mandatory statutory prohibition, Plaintiffs allegations cannot sustain an *ultra vires* claim.

Finally, Plaintiffs attempt to bring a constitutional *ultra vires* claim, but they lack a cause of action. To state a such a claim, Plaintiffs must make "specific allegations regarding separation of powers." *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023). For instance, in *Newsom v. Trump* the Ninth Circuit found that plaintiffs could bring a constitutional *ultra vires* claim alleging that the President encroached on Congress's "call forth" power by exceeding the relevant statutory delegation. *Newsom v. Trump*, --- F.4th ---, 2026 WL 3180273, at *45–46 (9th Cir. Oct. 23, 2026). As the "call forth" power belonged to Congress, any actions by the President in excess of Congress's delegation encroached on Congress's power. *Id.* Here, the President has not encroached on Congressional power, *see* Compl. ¶¶ 223–32, and, instead, acted pursuant to § 7103(b)(1)'s express authorization and his background Article II authority to manage the federal workforce and make sensitive national security determinations. *Youngstown*, 343 U.S. at 636 (Jackson, J. concurring); *Nixon v. Fitzgerald*, 457 U.S. 731, 749–50 (1982) (noting that the Constitution's grant of executive power to the President entrusts him "with supervisory and policy responsibilities of utmost discretion and sensitivity . . . . [which include] management of the

Executive Branch"). The President's power was at its zenith when making these determinations and should be given "the strongest of presumptions and the widest latitude of judicial interpretation." *Youngstown*, 343 U.S. at 637 (Jackson, J. concurring). Plaintiffs cannot escape the heightened standard for statutory *ultra vires* claims by recasting their claims as separation of powers allegations. Compl. ¶ 227. To do so would "[turn] every action by the President, or by another executive official, in excess of his statutory authority [into an] *ipso facto* in violation of the Constitution." *Dalton*, 511 U.S. at 472.

#### 4. Plaintiffs cannot avoid FSLMRS channeling by bringing an *ultra vires* claim

Plaintiffs cannot escape FSLMRS channeling scheme by characterizing their claims as *ultra vires*. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991); *accord AMERCO v. NLRB*, 458 F.3d 883, 889 (9th Cir. 2006).

### B. Plaintiffs' First Amendment Claims Fail Against a Facially Neutral Executive Order

To state a retaliation claim, "a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)). Even where a plaintiff can plead a *prima facie* claim, the burden shifts to the defendant to show "that even without the impetus to retaliate he would have taken the action complained of." *Boquist v. Courtney*, 32 F.4th 764, 777–78 (9th Cir. 2022) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). "If there is a finding that retaliation was not the but-for cause of the adverse action, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *AFGE II*, 178 F.4th at 466 (quoting *Hartman*, 547 U.S. at 260). Plaintiffs' claims fail on both fronts.

First, Plaintiffs fail to plausibly allege that their protected activities were a substantial or motivating factor in the President's decision. Plaintiffs rely on (1) the proximity of the Executive Order's issuance to their speech and (2) "[p]ublic statements" in "the White House's own Fact Sheet" to establish their prima facie case. *See* Compl. ¶¶ 215, 218, 220. But temporal proximity alone cannot show causal connection. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (reversing finding of retaliation where "suspect timing" was essentially the only evidence of retaliatory motive); *see also Jackson v. Chappell*,

No. C 14-3108 CRB (PR), 2017 WL 57304, at *8 (N.D. Cal. Jan. 5, 2017) ("[P]laintiff produces evidence of proximity in time between his protected speech and the allegedly retaliatory actions, which can be considered circumstantial evidence of retaliatory intent but alone is insufficient to establish retaliatory motive."). And the more significant proximate temporal event to the Executive Order was the change in presidential administrations and agency policies and priorities two months prior.

Although the Ninth Circuit did not formally decide whether Plaintiffs successfully pled a prima facie claim, its findings makes clear they have not: the Executive Order "discloses no retaliatory animus on its face[;]" the Fact Sheet, "taken as a whole, also demonstrates the President's focus on national security[;]" and the OPM Guidance "buttresses" that conclusion. *AFGE II*, 178 F.4th at 467. Additionally, the presumption of regularity applies in these circumstances and because the Court may not "probe the sincerity of the stated justifications for the policy by reference to extrinsic statements," *Hawaii*, 585 U.S. at 702, Plaintiffs cannot make up for a deficient pleading through a fishing expedition into the President's motives. *See id.* at 703 ("'when the Executive exercises [its] delegated power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification' against the asserted constitutional interests of U.S. citizens") (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)); *see also Ziglar*, 582 U.S. at 142.

Second, even if Plaintiffs could establish a *prima facie* case, they fail to allege that the President would not have made the same determinations regardless of Plaintiffs' speech. The Ninth Circuit determined that "the government has shown that the President would have taken the same action even in the absence of the protected conduct[,]" *AFGE II*, 178 F.4th at 466 (citing *Mt. Healthy*, 429 U.S. at 287), as the Executive Order "discloses no retaliatory animus on its face" and "expresses that the President's primary—if not only—concern with union activity was its interference with national security, which is a judgment that § 7103(b)(1) at least presumptively entrusts to the Executive." *Id.* at 467. This finding is fatal to Plaintiffs' retaliation claim.

Nor can Plaintiffs rescue their claim by alleging viewpoint discrimination. Compl. ¶ 220. Facially, the Executive Order does not target Plaintiffs at all, much less their viewpoints; it exempts *agencies and subdivisions* from the FSLMRS based on their national security roles, not unions' viewpoints. Given that facial neutrality, Plaintiffs' theory fails. *See Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th

Cir. 2018) ("If a law is facially neutral, we will not look beyond its text to investigate a possible viewpoint-discriminatory motive."); *accord First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1278 (9th Cir. 2017). Further, the Fact Sheet, "taken as a whole, also demonstrates the President's focus on national security[,]" not viewpoint discrimination. *AFGE II*, 178 F.4th at 467 (quoting *AFGE I*, 148 F.4th at 655).

### C. Plaintiffs' Fifth Amendment Claims Fail

Plaintiffs fail to assert a viable Fifth Amendment claim for three reasons. First, they allege no deprivation of a constitutionally protected property interest. *See Dudley v. Boise State Univ.*, 152 F.4th 981, 990 (9th Cir. 2025) ("[P]laintiff[s] must establish the existence of a liberty or property interest protected by the Constitution[.]" (citation omitted)). "[N]ot every interference with contractual expectations" gives rise to "federal due process protection." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1408 (9th Cir. 1987). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source" of law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). And if the source of law "grants the reviewing body unfettered discretion" to deny a benefit, it "does not create a property right" to it. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005). The FSLMRS permits the President to exempt agencies and subdivisions from union representation. *See* 5 U.S.C. § 7103(b). And Plaintiffs' CBAs are subject to applicable federal law, *see, e.g.*, U.S. Veteran Affairs & AFGE, 2023 Master Agreement at 6 (Aug. 8, 2023), https://perma.cc/W3NV-AX87 ("shall be governed by applicable federal statutes"), including § 7103(b). The President's exercise of statutory authority thus deprives no Plaintiff of any property interest.

Further, there are only "two general types of public contract rights that give rise to" protected property interests: (1) "'where the contract confers a protected status' due to extreme dependence, as is the case with welfare benefits, or permanence, as is the case with tenure, 'or sometimes both, as frequently occurs in the case of social security benefits,'" and (2) "where the contract itself contains a provision that the governmental entity can terminate the contract only for cause." *DeBoer v. Pennington*, 206 F.3d 857, 869 (9th Cir. 2000), *vacated on other grounds*, 532 U.S. 992 (2001), *reinstated in relevant part*, 287 F.3d 748 (9th Cir. 2002) (quoting *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991)). A CBA is neither. Any interest in the employment-related practices created by the CBA came

with the CBA's contingencies (*i.e.*, subject to Presidential exclusion from FSLMRS coverage), so there was no justified dependence on the part of employees or their unions, nor permanence in their rights. *See, e.g.*, *Roth*, 408 U.S. at 578 ("[j]ust as the welfare recipients' 'property' interest in welfare payments was created and defined by statutory terms, so the respondent's 'property' interest in [public] employment . . . was created and defined by the terms of his appointment"). And unlike contracts that create for-cause protections, *see, e.g.*, *San Bernardino Physicians' Servs.*, 825 F.2d at 1406, 1409 (employment contract that "could be terminated within its term only 'for cause'"), FSLMRS-CBAs are the opposite; because the President has unilateral authority to exclude an agency from FSLMRS coverage after the relevant determinations, CBAs may be terminated following such an order for at any time.

*Second*, Plaintiffs' substantive due process claim—that the United States is bound by its contracts and that the "due process clause prohibits [it] from annulling them," Compl. ¶ 243 (quoting *Lynch v. United States*, 292 U.S. 571, 579 (1934))—is really a breach of contract claim that does not implicate the Fifth Amendment. *See Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (Fifth Amendment claims "rarely arise under government contracts," which the government typically does not enter "in its sovereign capacity," so any "remedies arise from the contracts themselves," not "from the constitutional protection of private property rights"). Plaintiffs allege that the United States breached the CBAs by failing to honor them, and they seek what amounts to specific performance. But "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989); *see also N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994) (en banc) (Tucker Act impliedly forbids declaratory and injunctive relief on contract claims against the United States). Plaintiffs cannot obtain such relief by pitching a breach-of-contract claim as a constitutional violation.

*Third*, Plaintiffs' equal protection theory fails. Plaintiffs' theory appears to be that the Executive Order improperly discriminates against employees that Plaintiffs represent. *See* Compl. ¶ 248. But the Executive Order distinguishes between agencies, subdivisions, and "immediate, local employing offices," not the people in them or the unions representing them. Executive Order § 2(b). Plaintiffs are incorrect that E.O. Section 1-499(a) provides special protection for police officers, security guards, and firefighters but not similarly situated "employees at DOJ working on policing issues[.]" Compl. ¶ 248. The exception

applies to everyone in the "immediate, local employing office[.]" Executive Order § 1-499(a).

Even if the Executive Order distinguished between employees, rational basis review would apply. *See Olson v. California*, 104 F.4th 66, 76 (9th Cir.), *cert. denied*, 145 S. Ct. 382 (2024) (rational basis applies when statute does not distinguish between suspect classification or impinge on fundamental rights). Under this standard, the Executive Order "'carries with it a presumption of rationality,' and [the Court] must uphold it if 'the legislative means are rationally related to a legitimate governmental purpose.'" *Id.* (quoting *Hodel v. Indiana*, 452 U.S. 314, 331 (1981)). Here, any distinction is between employees based on whether they worked for an agency or subdivision that has "as a primary function intelligence, counterintelligence, investigative, or national security work" and that the provisions of the FSLMRS could not be applied to the agency or subdivision "in a manner consistent with national security requirements and considerations." Executive Order § 1; 5 U.S.C. § 7103(b)(1). National security concerns and the effective operation of the government certainly qualify as rationally related to a legitimate governmental purpose. As such, Plaintiffs' Equal Protection claim is easily dismissed.

## CONCLUSION

For these reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: November 6, 2026.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

TYLER BECKER
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Director
Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

BENJAMIN S. KURLAND
D.C. Bar No. 1617521
JEREMY MAURITZEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530

Tel: (202) 598-7755
Fax: (202) 616-8470
Email: Ben.Kurland@usdoj.gov

*Counsel for Defendants*