JONATHAN GUYNN
Acting Assistant Attorney General
TYLER BECKER
Counsel to the Assistant Attorney General, Civil Division
CHRISTOPHER R. HALL
Assistant Branch Director
BENJAMIN S. KURLAND
D.C. Bar No. 1617521
JEREMY MAURITZEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 598-7755
Fax: (202) 616-8470
Email: ben.kurland@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-03070-JD<br><br>**DEFENDANTS' DISCOVERY BRIEF**<br><br>Judge: Hon. James Donato |

## TABLE OF CONTENTS

INTRODUCTION ..... 1
ARGUMENT ..... 1
I. The Court Should Dismiss This Case, Not Order Discovery ..... 1
II. The White House Discovery is Inappropriate ..... 2
A. The Court Cannot Order Discovery Probing the President's Determinations ..... 2
B. Plaintiffs Fail to Justify Discovery Against the White House ..... 5
C. The White House Discovery is Unduly Burdensome and Irrelevant under Rule 26 ..... 8
III. The Agency Discovery is Irrelevant ..... 8
IV. Common and RFP-Specific Issues ..... 9
V. Defendants Complied with All Relevant Rules ..... 10
CONCLUSION ..... 10

# TABLE OF AUTHORITIES

## Cases

*AFGE v. Reagan*,
870 F.2d 723 (D.C. Cir. 1989) ........ 3

*AK Metals, LLC v. Norman Indus. Materials, Inc.*,
2013 WL 417323 (S.D. Cal. Jan. 31, 2013) ........ 9

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* ("*AFGE II*"),
178 F.4th 456 (9th Cir. 2026) ........ *passim*

*Am. Historical Ass'n v. Nat'l Archives & Records Admin.*,
402 F. Supp. 2d 171 (D.D.C. 2005) ........ 7

*Amazing Ins., Inc. v. DiManno*,
2020 WL 5440050 (E.D. Cal. Sept. 10, 2020) ........ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Boquist v. Courtney*,
32 F.4th 764 (9th Cir. 2022) ........ 4

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
201 F.R.D. 1 (D.D.C. 2001) ........ 1

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ........ 5, 6, 7, 8

*Cheng v. AIM Sports, Inc.*,
2011 WL 13196557 (C.D. Cal. Mar. 30, 2011) ........ 10

*Clinton v. Jones*,
520 US. 681 (1997) ........ 5

*Cnty. of King v. Turner*,
189 F.4th 819 (9th Cir. 2026) ........ 4

*Coastal States Gas Corp. v. Dep't of Energy*,
84 F.R.D. 278 (D. Del. 1979) ........ 1

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ........ 3

*In re BofI Holding, Inc. Sec. Litig.*,
2021 WL 3516490 (S.D. Cal. Aug. 10, 2021) ........ 10

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) .......... 6, 7

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) .......... 5, 6, 7, 8

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) .......... 1

*Little v. City of Seattle*,
863 F.2d 681 (9th Cir. 1988) .......... 1

*Loving v. Dep't of Def.*,
550 F.3d 32 (D.C. Cir. 2008) .......... 8

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) .......... 4

*Nieves v. Bartlett*,
587 U.S. 391 (2019) .......... 4

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) .......... 3, 5, 6

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) .......... 9

*Perkins Coie LLP v. Dep't of Just.*,
783 F. Supp. 3d 105 (D.D.C. 2025) .......... 4

*Petrus v. Bowen*,
833 F.2d 581 (5th Cir. 1987) .......... 1

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
732 F. Supp. 3d 1101 (N.D. Cal. 2024) .......... 2

*Sautter v. Sunbeam Prods., Inc.*,
2025 WL 1421275 (C.D. Cal. Mar. 31, 2025) .......... 8

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) .......... 6

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995) .......... 10

*Trump v. Cook*,
609 U.S. 528 (2026) .......... 4, 5

*Trump v. Hawaii*,
585 U.S. 667 (2018) .......... 1, 2, 3

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021) .......... 9

*United States v. McGraw Hill Cos.*,
2014 WL 8662657 (C.D. Cal. Sept. 25, 2014) .......... 6

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 7

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 5

**Statutes**

5 U.S.C § 7103 .......... *passim*

**Rules**

Fed. R. Civ. P. 26 .......... 1, 8, 10

**Regulations**

Exec. Order No. 12,171, 44 Fed. Reg. 66,565 (Nov. 20, 1979) .......... 3

Exec. Order No. 12,559, 51 Fed. Reg.  (May 22, 1986) .......... 3

Exec. Order No. 12,632, 53 Fed. Reg. 9,852 (Mar. 23, 1988) .......... 3

Exec. Order No. 13,039, , 62 Fed. Reg. 12,529 (Mar. 14, 1997) .......... 3

Exec. Order No. 13,252, 67 Fed. Reg. 1,601 (Jan. 7, 2002) .......... 3

Exec. Order No. 13,480, 73 Fed. Reg. 73,991 (Dec. 4, 2008) .......... 3

Exec. Order No. 13,760, 73 Fed. Reg. 73,991 (Jan. 17, 2017) .......... 3

Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) .......... 1, 9

## INTRODUCTION

This case involves the President's discretionary § 7103(b)(1) decision, exercised with statutory and constitutional authority, which the Ninth Circuit found "discloses no retaliatory animus." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 178 F.4th 456, 467 (9th Cir. 2026) ("*AFGE II*"). The case should be dismissed, not sent to discovery. *See* Defs.' Motion to Dismiss, ECF No. 92 ("MTD"). Nor is discovery appropriate or relevant. Plaintiffs' challenge to the President's exclusion under the Federal Service Labor-Management Relations Statute ("FSLMRS") involves legal, not factual, questions. *See* Exec. Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) ("Executive Order"). No discovery would elucidate the legal question of whether the President properly invoked the FSLMRS (he did) and certainly not the overbroad, irrelevant, and burdensome discovery Plaintiffs propounded.[1]

Further, Plaintiffs cannot rescue their First Amendment claims through a Court-sanctioned fishing expedition as such a "searching inquiry . . . is inconsistent with the broad statutory text and the deference traditionally accorded the President[.]" *Trump v. Hawaii*, 585 U.S. 667, 686 (2018). The President made the necessary statutory findings, *see* Executive Order § 1, the Ninth Circuit determined that the "President's primary—if not only—concern with union activity was its interference with national security," *AFGE II*, 178 F.4th at 467, and confronting a "facially legitimate and bona fide reason," the Court cannot "look behind the exercise of that discretion," *Hawaii*, 585 U.S. at 703 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). Again, no discovery is appropriate or relevant.

## ARGUMENT

### I. The Court Should Dismiss This Case, Not Order Discovery

"A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (quoting *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987)); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); Fed. R. Civ. P. 26(c) (protective orders issued for good cause). Doing so "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous,* 201 F.R.D. at 2 (quoting *Coastal States*

[1] *See* Pls.' First Set of Reqs. For the Produc. of Docs. to Defs., Ex. A ("RFPs"); *see also* Defs.' Resps. & Objs. to Pls.' First Set of Reqs. for Produc. of Docs., Ex. A, ECF No. 88 ("Resps. & Objs.").

*Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979)). Courts in the Ninth Circuit examine two factors: (1) whether the motion is "potentially dispositive of the entire case;" and (2) whether it can be resolved "absent additional discovery." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1118 (N.D. Cal. 2024) (citations omitted). Courts also take a "preliminary peek" at the merits of the dispositive motion. *Id.*

Defendants have filed their motion for the Court's review. *See* MTD. The motion would entirely resolve this case without the need for discovery. The questions involved are legal in nature: Plaintiffs' *ultra vires* claim is precluded, unreviewable, and fails on the merits, *id.* at 4–11; their First Amendment claims fail based on the Ninth's Circuit's finding that the Executive Order is neutral on its face, *id.* at 11–13 (citing *AFGE II*, 178 F.4th at 467); and their Fifth Amendment claims fail on legal grounds, *id.* at 13–15. Thus, both prongs of the Ninth Circuit's test are met.

## II. The White House Discovery is Inappropriate

### A. The Court Cannot Order Discovery Probing the President's Determinations

Plaintiffs seek extensive discovery from the White House, *see* RFP Nos. 1–6, 9, 11–12, 14, 16, 22–27, 29, but their requests are foreclosed by *Hawaii*. Like this case, *Hawaii* involved broad grants of statutory authority in areas where the President maintained inherent constitutional authority exercised on "facially neutral" grounds, which Plaintiffs challenged on First Amendment grounds alleging "motivat[ion] not by concerns pertaining to national security but by animus[.]" *Hawaii*, 585 U.S. at 681, 684, 702. The cases are indistinguishable and so too should be their results.

Plaintiffs' counterarguments are unavailing. First, they claim that the Supreme Court "assumed without deciding" that it could consider extrinsic evidence in *Hawaii*, so they should be permitted the "searching inquiry" that *Hawaii* foreclosed. *Id.* at 686; Pls.' Brief Re: Disc. at 5, ECF No. 88 ("Pls.' Br."). Like the Supreme Court in *Hawaii*, 585 U.S. at 703–704, the Ninth Circuit questioned its authority to review extrinsic evidence when confronting a facially neutral Executive Order. *See AFGE II*, 178 F.4th at 467. That should end the inquiry. Even if some measure of extrinsic evidence is reviewable, Plaintiffs misunderstand *Hawaii*. The Supreme Court limited its review to "look[ing] behind the face of the Proclamation to the extent of applying rational basis review" so that it would uphold the policy "so long as it can reasonably be understood to result from a justification independent of unconstitutional grounds."

585 U.S. at 704–05. Recognizing the rationality of the President's justification, the Supreme Court affirmed that a "searching inquiry into the persuasiveness of the President's justifications [was] inconsistent" with the statute and deference afforded the President. *Id.* at 685. Here, the Ninth Circuit did just that, determining that the Executive Order's "primary—if not only—concern" was interference with national security and ability to operate the Executive Branch, which the Executive Order's supporting documents reinforced. *AFGE II*, 178 F.4th at 467–68. Based on the Ninth Circuit's recognition of legitimate grounds for the Executive Order that fulfill § 7103(b)(1)'s terms, and *Hawaii*'s confirmation that searching inquiry cannot invade, discovery to probe the President's determinations is both foreclosed by *Hawaii* and unnecessary and irrelevant because the inquiry has been answered.

Second, Plaintiffs suggest that *Hawaii* "did not announce [a] categorical rule that 'national security' determinations . . . must be assessed only on their face." Pls.' Br. at 5. But the question in this case is not about "categorical" national security rules, but a fair reading of a statute that commits a decision to the President's discretion in areas where the Executive is afforded deference. *See Hawaii*, 585 U.S. at 683–84; MTD at 5–6. The President made the necessary statutory determinations, the justifications for which are not open to searching inquiry, and discovery is thus neither appropriate nor necessary. Further, Plaintiffs' attempt to limit *Hawaii* to the immigration context, Pls.' Br. at 5–6, also fails on the face of § 7103(b)(1) as it too places the discretionary decision in the contexts of national security and management of the Executive Branch, both realms in which the President is granted significant discretionary and constitutional authority. *See, e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–35 (2010); *Nixon v. Fitzgerald*, 457 U.S. 731, 750 (1982).

Third, Plaintiffs allege that the proclamation in *Hawaii* contained extensive findings, so that the Executive Order must too. Pls.' Br. at 6. But neither *Hawaii* nor § 7103(b)(1) prescribe the level of detail the President must recite before exercising his authority and precedent confirms that he need not "insert written findings into an exempting order[]" under § 7103(b)(1). *AFGE v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989). In fact, the Executive Order is in line in form and depth with previous exemption orders.[2]

[2] *See* Exec. Order No. 12,171, 44 Fed. Reg. 66,565 (Nov. 20, 1979); Exec. Order No. 12,559, 51 Fed. Reg. 16,761 (May 22, 1986); Exec. Order No. 12,632, 53 Fed. Reg. 9,852 (Mar. 23, 1988); Exec. Order No. 13,039, 62 Fed. Reg. 12,529 (Mar. 14, 1997); Exec. Order No. 13,252, 67 Fed. Reg. 1,601 (Jan. 7, 2002); Exec. Order No. 13,480, 73 Fed. Reg. 73,991 (Dec. 4, 2008); Exec. Order No. 13,760, 73 Fed. Reg. 73,991 (Jan. 17, 2017).

Plaintiffs' other arguments also fail. They argue that the Court has jurisdiction and authority to assess Plaintiffs' First Amendment claims. Pls.' Br. at 2. But Defendants' Motion to Dismiss explains why that is not so. *See* MTD at 3–4 (lack of jurisdiction), 11–13 (failure to state a claim). Those claims are difficult to reconcile with the Ninth Circuit's analysis, as it found that the Executive Order "discloses no retaliatory animus" and "expresses that the President's primary—if not only—concern with union activity was its interference with national security," *AFGE II*, 178 F.4th at 467. No amount of discovery will rescue Plaintiffs' claims from the fact that the President issued the Executive Order based on discretionary national security findings. *Id*. at 466 ("If there is a finding that retaliation was not the but-for cause of the adverse action, the claim fails for lack of causal connection between unconstitutional motive and resulting harm[.]" (quoting *Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022))). For the same reason, Plaintiffs' plea for a "fact-intensive" inquiry based on general First Amendment principles, *see* Pls,' Br. at 2–3 (citing *Nieves v. Bartlett*, 587 U.S. 391, 396 (2019); *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 189–90 (2024)), cannot save claims that fail to state a claim, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–97 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"), especially in light of the Ninth Circuit's findings.

Plaintiffs' reliance on *Perkins Coie LLP v. Dep't of Just.*, 783 F. Supp. 3d 105 (D.D.C. 2025) is similarly misplaced. Pls.' Br. at 3. The Executive Order in *Perkins*, Exec. Order No. 14,230, 90 Fed. Reg. 11781 (Mar. 6, 2025), did not involve invocation of Congressional-granted statutory authority, as is the case here. This case is not about free-floating Executive authority or categorical rules, but examination of this specific statute, the broad discretion it confers, and the limits *Hawaii* places on probing the President's facially legitimate and bona fide invocation of the FSLMRS. The difference is highlighted by the fact that *Perkins*'s extensive opinion does not mention, let alone analyzed, *Hawaii*. *See Perkins*, 783 F. Supp. 3d 105. It was not at issue in that case as it is here.

So too with Plaintiffs' argument that discovery is necessary to explore the President's exercise of delegated statutory authority under *Trump v. Cook*, 609 U.S. 528 (2026). Pls.' Br. at 3–4. The extent of delegated authority and whether the Executive Order fell within it are legal, not factual, questions the Court can resolve on the face of the FSLMRS and Executive Order. *See* MTD at 4–11; *see also Cnty. of King v. Turner*, 189 F.4th 819, 836 (9th Cir. 2026) ("[t]he meaning of statutory terms and the boundaries

of delegated authority are questions of law" (citation omitted)). Indeed, in *Cook*, the Supreme Court first determined the legal questions regarding the bounds of the relevant statute's "for cause" prerequisite. *See* 609 U.S. at 542–47. Only then did the Supreme Court recognize that a factual inquiry into whether "cause" was met may be appropriate. *See id.* at 547. Ultimately, however, the Supreme Court decided the case on legal grounds of what process was due. *Id.* at 550–57. Despite Plaintiffs' tortured reading of § 7103(b)(1), *see* Pls.' Br. at 4, § 7103(b)(1) does not set a prerequisite like *Cook*'s for cause limitation, *see* MTD at 8, and, instead, "fairly exudes deference" to the President, *Webster v. Doe*, 486 U.S. 592, 600 (1988).

**B. Plaintiffs Fail to Justify Discovery Against the White House**

The Supreme Court holds that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery." *Clinton v. Jones*, 520 US. 681, 707 (1997). The President's "unique position in the constitutional scheme" "counsel[s] judicial deference and restraint." *Nixon*, 457 U.S. at 749, 753. Courts must ensure that civil discovery does not intrude on the "public interest" in (1) "afford[ing] Presidential confidentiality the greatest protection consistent with the fair administration of justice"; and (2) "protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 382 (2004) (citation omitted).

Plaintiffs attempt to use discovery to interrogate the President's discretionary national security determinations despite the Ninth Circuit's finding that the Executive Order reveals no retaliatory animus. *AFGE II*, 178 F.4th at 467. Allowing Plaintiffs to invade the President's decision-making through discovery raises significant separation of powers concerns and runs counter to *Cheney*. Plaintiffs failed to establish a "preliminary showing of need demonstrating 'that the evidence sought [is] directly relevant to issues that are expected to be central to the trial' and 'is not available with due diligence elsewhere.'" *Karnoski v. Trump*, 926 F.3d 1180, 1205 (9th Cir. 2019) (per curiam) (citation omitted).

First, Plaintiffs' requests are not relevant. This Court lacks the authority to second-guess the President's facially valid § 7103(b)(1) determinations. *See supra* § II.A. None of Plaintiffs' discovery requests can be central to the trial when the only question is whether the President's determinations were facially valid, which the Ninth Circuit has already answered. *See AFGE II*, 178 F.4th at 467.

Second, Plaintiffs' requests are premature. Courts are extremely cautious before allowing discovery into the President's discretionary policy determinations, which implicates serious separation of powers concerns.[3] *See generally Cheney¸* 542 U.S. 367; *Karnoski*, 962 F.3d at 1207 (vacating "district court's discovery orders because the district court did not fulfill its obligation 'to explore other avenues, short of forcing the Executive to invoke its privilege'" (quoting *Cheney*, 542 U.S. at 390)). This Court should hesitate before rushing into a constitutional "collision course" between "coequal branches of the Government." *Cheney*, 542 U.S. at 389. The Court should decide Defendants' motion to dismiss. *See supra* § I; *United States v. McGraw Hill Cos.*, 2014 WL 8662657, at *8 (C.D. Cal. Sept. 25, 2014) ("The Supreme Court has been crystal clear: courts must ensure that the invocation of executive privilege is the last resort."). If some claims survive, a ruling would still narrow any potential discovery by dismissing others or clarifying the applicable scope and standard of review.

Third, Plaintiffs' requests, which facially seek privileged material, would impose a significant burden on the Executive Branch and intrude on the President's constitutional authority to manage the federal workforce and make sensitive national security determinations. *Schneider v. Kissinger*, 412 F.3d 190, 195 (D.C. Cir. 2005); *Nixon*, 457 U.S. at 749–50. Because Plaintiffs challenge the President's motive behind issuing the Executive Order, most if not all of their requests seek information plainly covered by the presidential communication privilege.[4] For instance, information about prior drafts of the Executive Order (RFP No. 5) or communications about whether certain agencies would be included (RFP Nos. 7–13, 16–21) are plainly protected. *Cheney* held that requiring the Executive Branch to search for such documents only to later invoke executive privilege is itself a significant intrusion. *See Cheney*, 542 U.S. at 385 (stating that "the burden imposed by discovery orders" is "[a]n important factor" in weighing

[3] Plaintiffs served third-party subpoenas on the International Brotherhood of Teamsters and the Fraternal Order of Police, on October 28, 2026, months after serving the broad ranging discovery requests at issue here. Putting aside that Plaintiffs served the discovery at issue here before seeking information from any other source, *Karnoski*, 926 F.3d at 1205, they should, at minimum, explore whether these subpoenas will result in any productions.

[4] The presidential communications privilege protects the confidentiality of presidential decision-making by shielding communications made while performing the President's official responsibilities and shaping Government policy. *In re Sealed Case*, 121 F.3d 729, 743–46, 752 (D.C. Cir. 1997). The privilege extends beyond direct communications with the President to communications authored or solicited and received by the President's immediate advisers and their staffs in preparing advice for the President. *Id.* It protects documents in their entirety, including factual and post-decisional material. *Id.* at 745–46.

whether to allow discovery against the Executive Branch). Moreover, although the presidential communication privilege does not categorically protect communications outside of the President's immediate White House staff, it does extend "to communications authored or solicited and received" by that staff. *In re Sealed Case*, 121 F.3d at 752. And if not protected by the presidential communications privilege, such information is likely covered by other executive privileges such as the deliberative process privilege.[5] *See infra* § II.C. Therefore, large swathes (if not all) of Plaintiffs' discovery is likely privileged, as the agencies could have only advised the President on how to exercise his authority.

Plaintiffs argue that this case is distinguishable from *Cheney* because their suit serves more significant constitutional interests by alleging First Amendment retaliation at "the highest levels of Government." Pl. Br. at 9. But *Cheney* made clear that "[t]he need for information . . . in civil cases," like Plaintiffs', does not carry the same weight as criminal subpoena requests. *Cheney*, 542 U.S. at 384–86 (citing *United States v. Nixon*, 418 U.S. 683, 711 (1974)); *see also Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F. Supp. 2d 171, 181 (D.D.C. 2005). Nor do Plaintiffs' "allegations of misconduct by high-level officials" absolve Plaintiffs from the requirement to "provide a focused demonstration of need." *In re Sealed Case*, 121 F.3d at 746. If anything, the potential burdens on the Government are greater here than in *Cheney*; the discovery requests at issue in *Cheney* sought records related to an advisory committee, while Plaintiffs here seek to pry into the President's discretionary national security determinations through discovery against the entirety of EOP, OPM, and twenty different agencies. *Cheney*, 542 U.S. at 386. This is especially problematic given the Ninth Circuit's finding that on its face the Executive Order expressed no retaliatory animus and demonstrated that the President's primary—if not only—concern was how union activity interfered with national security. *AFGE II*, 178 F.4th at 467.

Fourth, Plaintiffs' requests are unnecessarily broad. For instance, Plaintiffs seek "all communications within or between OPM, OMB, DOGE, or [EOP]" from January 20, 2025 to the present concerning the Executive Order. RFP No. 1. But they have not explained why communications post-dating the Executive Order by as long as eighteen months are "directly relevant to [the] issues that are . . . central to the trial." *Karnoski*, 926 F.3d at 1205. So too for their requests for all communications between OPM,

[5] The deliberative process privilege "allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d at 737.

OMB, DOGE, or EOP and any defendant agency during the same period. RFP No. 3. Plaintiffs have not demonstrated how communications with Defendant agencies are relevant to the President's motivations for issuing Executive Order, let alone how they are "central to the trial." *Karnoski*, 926 F.3d at 1205.

At bottom, where Plaintiffs seek discovery to examine the motivations behind the President's discretionary determination in areas he has independent constitutional authority, "the Executive's interests in maintaining its autonomy and safeguarding its communications' confidentiality are implicated." *Cheney*, 542 U.S. at 370. Discovery requiring the Government to search for, review, and log or produce communications and records covered by the presidential communications privilege from twenty defendant agencies and all of EOP is overly burdensome, disproportionate to the needs of the case, and would threaten "the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). Before ordering any discovery, the Court should decide Defendant's motion to dismiss and, if applicable, require Plaintiffs to submit requests narrowly tailored to any surviving claims.

**C. The White House Discovery is Unduly Burdensome and Irrelevant under Rule 26**

For many of the same reasons that Plaintiffs cannot overcome *Cheney*, their requests also fail under Rule 26. *See* Fed. R. Civ. P. 26(b)(1) (scope limited to relevant and proportional discovery), (c) (protective orders from undue burden). Plaintiffs' wide-ranging White House discovery is irrelevant to examining the President's discretionary determination because, again, the Court may not. *See supra* § II.A. Further, because the requests target materials necessarily covered by privilege, they are facially overbroad and burdensome. *See, e.g.*, *Sautter v. Sunbeam Prods., Inc.*, 2025 WL 1421275, at *7 (C.D. Cal. Mar. 31, 2025) ("easily" rejecting discovery requests which were "facially overbroad because they clearly encompass privileged and confidential information"). White House communications regarding the Executive Order are necessarily covered by the deliberative process and presidential communications privileges, as § 7103(b)(1) places the sole decision-making authority in the President's hands. Any communications to him could only have advised him on that decision.

**III. The Agency Discovery is Irrelevant**

Plaintiffs seek irrelevant and burdensome discovery from the agency defendants. *See* RFP Nos. 7, 8, 10, 13, 15, 17. This includes nearly two years of communications in some instances, RFP No. 8, or four

months in others, *see* RFP Nos. 10, 13, 15, 17, from the *twenty* defendants agencies or entities, none of which § 7103(b)(1) grants authority or control over the *President*'s exercise of statutory and constitutional authority. Discovery from these agencies is, therefore, irrelevant to Plaintiffs' claims. And, again, Plaintiffs' discovery requests facially seek privileged materials, as the only role the agencies could have played in exercising § 7103(b)(1) is advising the President as he made his decision. *See supra* §§ II.B, C. Further still, Plaintiffs' RFP No. 7 expressly seeks reports that could not have played a role in the issuance of the Executive Order because they were requested by—and, therefore, post-dated—the Executive Order. *See* Executive Order § 7.

**IV. Common and RFP-Specific Issues**

Plaintiffs' discovery requests have additional deficiencies. Thus, if the Court orders discovery (it should not), it should at the same time limit Plaintiffs' discovery requests accordingly.

RFP Nos. 18–21, 28, and 30–33 are vague and ambiguous as they do not indicate from whom the discovery is sought. *See AK Metals, LLC v. Norman Indus. Materials, Inc.*, 2013 WL 417323, at *11 (S.D. Cal. Jan. 31, 2013) (denying expedited discovery where request was not "specific about the discovery sought or from whom it [was] sought."). Further, if they seek documents from the White House or the agency defendants, they run into the issues outlined above. *See supra* §§ II, III.

RFP Nos. 5–7 seek nothing but materials covered by the deliberative process privilege. *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 267–73 (2021) (draft biological opinions covered by deliberative process privilege, as incorporated by FOIA). Indeed, all of Plaintiffs' requests seek facially deliberative materials as the Supreme Court advised in *Sierra Club* that courts must evaluate deliberative process "in the context of the administrative process which generated them." *Id.* at 269 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975)). Here, § 7103(b)(1) places the whole of its discretionary authority in the President's hands, meaning the communications and reports Plaintiffs seek necessarily could only have advised the President on how to execute his authority. *See Sierra Club*, 592 U.S. at 267 ("the deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]'" (quoting *NLRB*, 421 U.S. at 150)); *see also supra* §§ II.C, III.

Several of Plaintiffs' requests seek documents from January 20, 2025, to the present, *see* RFP Nos.

1–7, 18–19, 22–33, while others limit their timeframe to April 30, 2025, *see* RFP Nos. 9–17, 20–21. But the Executive Order was published on March 27, 2025. Any documents or communications post-dating it could not have played a role in its issuance.

Plaintiffs also seek documents which are either public or in their possession. *See* RFP Nos. 4, 28 (seeking press releases), 30 (seeking Plaintiffs' Collective Bargaining Agreements); Fed. R. Civ. P. 26(b)(2)(C)(i). Further, RFP 30, which seeks documents relating to all CBAs is irrelevant because Plaintiffs make no claims about the cancellation of any specific CBA, *see generally*, Compl. ECF No. 1, and cancellation of non-plaintiff unions' CBAs are irrelevant to Plaintiffs' claims. Finally, RFP Nos. 31–33 are unnecessarily duplicative of Plaintiffs' preceding requests. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

**V. Defendants Complied with All Relevant Rules**

Plaintiffs complain that Defendants did not comply with FRCP 24 and the Court's Standing Order. Pls.' Br. at 2 n.2. If Plaintiffs' complaint is that Defendants did not identify "the full extent to which they will produce materials," Standing Order ¶ 2, Defendants did in fact respond to each request, stating that "Defendants object to this Request and to all discovery in this matter. Defendants will not produce any documents pursuant to this Request." *See* Resps. & Objs. at 7–24. Plaintiffs' displeasure with the answer is not the same as non-compliance. If their complaint is that Defendants did not produce a privilege log, Plaintiffs must first "make a threshold showing that the discovery sought is relevant[,] *Amazing Ins., Inc. v. DiManno*, 2020 WL 5440050, at *3 (E.D. Cal. Sept. 10, 2020); *see also Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995), and must "'narrowly tailor their discovery requests' to seek only such information as may be relevant to a party's claims or defenses[,]" *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3516490, at *2 (S.D. Cal. Aug. 10, 2021) (quoting *Cheng v. AIM Sports, Inc.*, 2011 WL 13196557, at *6 (C.D. Cal. Mar. 30, 2011)). It would be unduly burdensome for Defendants to have to collect, review, and log Plaintiffs' discovery requests before Plaintiffs establish an entitlement to discovery and where their requests predominately seek privileged material.

**CONCLUSION**

Based on the foregoing, the Court should deny Plaintiffs' discovery requests, grant Defendants' Motion to Dismiss, and resolve this case.

Dated: November 12, 2026. Respectfully submitted,

JONATHAN GUYNN
Acting Assistant Attorney General

TYLER BECKER
Counsel to the Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

BENJAMIN S. KURLAND
D.C. Bar No. 1617521
JEREMY MAURITZEN
Trial Attorneys
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L St., NW, Twelfth Floor
Washington, DC 20530
Tel: (202) 598-7755
Fax: (202) 616-8470
Email: Ben.Kurland@usdoj.gov

*Counsel for Defendants*