Danielle Leonard (SBN 218201)
Connie K. Chan (SBN 284230)
Anita T. Alem (SBN 353683)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
dleonard@altber.com
cchan@altber.com
aalem@altber.com

*Attorneys for Plaintiffs*
[Additional counsel and affiliations on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 3:25-cv-03070-JD<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Date: Nov. 19, 2026<br>Time: 11 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11<br><br>Action Filed: April 3, 2025 |

Plaintiffs submit as supplemental authority in support of Plaintiffs' position on the propriety of discovery in this case (*see* Dkt. 88), the attached November 16, 2026, order from *American Bar Ass'n v. Exec. Off. of the President et al*, No. 1:25-cv-01888 (D.D.C. June 16, 2025), a case cited in Plaintiffs' Brief Re: Discovery, Dkt. 88 at 8. The attached order grants in part and denies in part the plaintiff American Bar Association's requests for production served on the Executive Office of the President regarding the Executive Orders challenged there on First Amendment and other grounds.

DATED: November 17, 2026

Respectfully submitted,

Danielle Leonard
Connie K. Chan
Anita T. Alem
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
dleonard@altshulerberzon.com
cchan@altshulerberzon.com
aalem@altber.com

By: /s/ Danielle Leonard

*Attorneys for Plaintiffs*

Rushab B. Sanghvi (SBN 302809)
Andres M. Grajales (pro hac vice)
American Federation of Government Employees, AFL-CIO
80 F Street NW
Washington, D.C. 20001
Tel: (202) 639-6426
SanghR@afge.org
Grajaa@afge.org

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Nicole Daro (SBN 276948)
National Nurses United
155 Grand Ave.
Oakland, CA 94612
Tel: (510) 207-8291
ndaro@calnurses.org

*Attorney for Plaintiff NNOC/NNU*

Sarah E. Suszczyk (pro hac vice)
National Association of Government Employees, Inc.
159 Thomas Burgin Parkway
Quincy, MA 02169
Tel: (617) 376-7239
ssuszczyk@nage.org

*Attorney For Plaintiff National Association of Government Employees (NAGE)*

Teague P. Paterson (SBN 226659)
Matthew S. Blumin (pro hac vice)
American Federation of State, County, and Municipal Employees, AFL-CIO
1625 L Street NW
Washington, D.C. 20036
Tel: (202) 775-5900
Fax: (202) 452-0556
tpaterson@afscme.org
mblumin@afscme.org

*Attorneys for Plaintiff American Federation of State County and Municipal Employees, AFL-CIO (AFSCME)*

Steven K. Ury (SBN 199499)
Service Employees International Union, AFL-CIO
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel: (202) 730-7428
steven.ury@seiu.org

*Attorney for Plaintiff Service Employees International Union, AFL-CIO (SEIU)*

Yvette M. Piacsek (pro hac vice)
General Counsel
National Federation of Federal Employees, IAM, AFL-CIO
1225 New York Avenue NW, Suite 450
Washington, D.C. 20005
Tel: (202) 216-4428
ypiacsek@nffe.org

*Attorney for Plaintiff National Federation of Federal Employees, IAM, AFL-CIO (NFFE)*

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN BAR ASSOCIATION,<br><br>*Plaintiff*,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-01888 (AHA) |

**Memorandum Opinion and Order**

The American Bar Association ("ABA") sued federal agencies and officials, alleging they adopted an unlawful, coordinated policy of sanctioning law firms and their lawyers for engaging in speech the government does not like. The government objected to discovery requests served on the Executive Office of the President ("EOP") on grounds that they are overbroad under *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), and the ABA now moves to compel responses. After considering the parties' written submissions and holding multiple hearings, balancing the need for discovery in this case against the executive branch's important interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications, and exploring ways to craft a narrower approach to that balance, the court grants the ABA's motion in part and denies it in part. Specifically, the court denies the motion as moot as to requests 3, 4, 5, 6, 11, and 12; denies the motion without prejudice as to requests 8, 10, 14, 15, and 16; and grants the motion as to narrowed forms of requests 1, 2, 7, 9, and 13.

## I. Background

In June 2025, the ABA sued federal agencies and officials, alleging the executive branch had adopted an unlawful, coordinated policy of sanctioning law firms and their lawyers for engaging in speech the government does not like. *See* ECF No. 1 ¶¶ 4–22. The ABA's 85-page complaint details a 14-week period leading up to this suit in which the government launched and executed a coordinated campaign to intimidate and punish law firms and their lawyers based on that disfavored speech. *ABA v. EOP*, 827 F. Supp. 3d 117, 122 (D.D.C. 2026); *see* ECF No. 1 ¶¶ 61–181. This included a series of executive orders issued in quick succession imposing virtually identical sanctions on law firms and their lawyers, numerous instances in which law firms made concessions to the administration to avoid such sanctions, and explicit statements from government officials recognizing the administration's commitment to pursuing the sanctions. *ABA*, 827 F. Supp. 3d at 122–24.

Before starting discovery, the parties filed a case management plan that jointly proposed a procedure for prompt resolution of any discovery disputes based on *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004). ECF No. 55 at 6–8. The court adopted that procedure, ordering the parties to "attempt resolution of Defendants' overbreadth objection(s) through conferral, *e.g.*, as through modification or narrowing of the request(s)," before requesting a telephone conference and leave to file a motion to compel with the court. ECF No. 57 at 3.

The ABA served discovery requests in May 2026, including sixteen requests for production directed to EOP. ECF No. 61-1 at 14–16. The government objected to those requests as overbroad under *Cheney*. *See* ECF No. 61-2; ECF No. 61-3 at 1. After the parties conferred regarding the government's *Cheney* objections, the court held multiple hearings in an effort to narrow the disputes and to balance the need for discovery in this case against the executive branch's important

interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications.

First, the court ordered that the parties' briefing on the motion to compel "address with specificity how *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) applies to each individual document request, and include any proposals for how the requests may be narrowed." Minute Order (June 25, 2026). In its briefing, the ABA proposed various ways of narrowing several of the requests. *See* ECF No. 61 at 13–18. The government responded by insisting that, even with the proposed narrowing, the discovery requests were still overbroad under *Cheney* and the ABA must first pursue other available sources for the records. ECF No. 67. The government's brief did not propose any ways to narrow the terms of the requests themselves. *See id.*

Second, after the parties' briefing, the court held a discovery conference to discuss ways to further narrow the ABA's discovery requests. At the court's hearing, the government reiterated its general *Cheney* objections based on executive prerogative and structural considerations, and it also made clear it was not contending that the ABA's discovery requests posed practical burdens beyond those implicated in ordinary discovery. *See* ECF No. 75 at 40–41 (government counsel clarifying he was not arguing any practical burden beyond that it is generally "burdensome to search for documents" and "burdensome to review documents for privilege"). The court proposed ways to narrow various requests, including by identifying and limiting the custodians, limiting the time period, and proceeding with discovery in phases. *See, e.g.*, *id.* at 25–26, 39–40, 42–47, 51–53, 62–68, 72–74. At the hearing, the government agreed that these methods would be helpful ways to narrow the dispute and reduce any burden on the executive branch. *See id.* at 42 (government counsel explaining that it has suggested "seeking the identity of certain individuals, custodians that are better suited for interrogatories" as "one way of narrowing"); *id.* at 53

(government agreeing with the court that "presumably knowing who" was in contact with the law firms would be helpful to narrow the requests); *id.* at 63–64 (government agreeing with the court that "interrogatories are the cleanest way for [it] to provide" the identities of individuals because "whether it's an interrogatory as opposed to a document request, it does change as far as *Cheney* goes, because a document request seeking identities of individuals . . . means we're providing them documents that will inherently include extraneous information"); *see also* ECF No. 61-3 at 1 (government proposing in a conferral email that requests 10, 11, and 12 "be narrowed by posing the request as an interrogatory as opposed to a broader and more burdensome document request").

Given that discussion, the court directed the government to "file a notice with the court identifying the names of the individuals at issue" for the requests that had been discussed at the hearing. Minute Order (Aug. 3, 2026). The court explained that, "[t]o the extent Defendants believe any individual's or custodian's name is properly withheld pursuant to privilege, they shall explain the basis for the privilege, including the relevant legal authorities and required evidentiary basis to support the privilege." *Id.* The government's notice retreated from the narrowing it acknowledged at the hearing and returned to a broader invocation of *Cheney*. *See* ECF No. 79 at 1–2 (arguing that discovery "should not proceed against the White House, per *Cheney*"); ECF No. 79-1 ¶ 5. The government also formally asserted the presidential communications privilege and refused to provide the identities of the individuals and custodians, aside from those already identified in the complaint. *See* ECF No. 79 at 2; ECF No. 79-1 ¶ 5.

## II. Discussion

The ABA moves to compel the government to respond to requests for production that the government objects to as "overly broad" under *Cheney*. 542 U.S. at 386; *see* ECF No. 61. The parties agree that a response here does not necessarily mean producing responsive documents; it

means producing responsive documents or asserting privilege. *See* ECF No. 61 at 1, 5; ECF No. 67 at 5.

### A. The Court Exercises Its General Discretion In Managing Discovery To Avoid Overbreadth Concerns, Even If *Cheney* Requires Less

The parties dispute whether *Cheney* shields EOP from responding to discovery requests that are overbroad only when the requests seek information that plausibly implicates a claim of privilege (as the ABA reads it) or whether the case is animated by a more general concern about overly burdensome discovery on senior executive officials (as the government reads it). The court starts by reviewing *Cheney* in detail and concluding the government likely has the better reading. In any event, to the extent not specifically required by *Cheney*, the further limitations the court places on the requests here are justified by its own discretion to manage discovery, to balance the ABA's need for the information against the burden on the government. *See* Fed. R. Civ. P. 26(b)(1); *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020) ("As we have repeatedly recognized, district courts have broad discretion over the structure, timing, and scope of discovery.").

The dispute in *Cheney* arose from the President's creation of an energy policy task force, which was chaired by the Vice President and included other federal government officers. 542 U.S. at 373. Two nonprofits sued, asserting that the task force violated disclosure requirements that apply to committees created to advise the executive branch, and they served discovery requests on the Vice President and other senior officials on the task force. *Id.* at 373–76. The district court "acknowledg[ed] that discovery itself might raise serious constitutional questions" but ordered the government to respond anyways, reasoning that "the Government could assert executive privilege to protect sensitive materials from disclosure." *Id.* at 375; *see Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, No. 01-cv-01530 (D.D.C.), ECF Nos. 101, 154. The government appealed and

sought mandamus, and the D.C. Circuit dismissed the appeal, reasoning that the proper way "to guard against intrusion into the President's prerogatives" was for the President to "first assert privilege." *Cheney,* 542 U.S. at 376.

The Supreme Court vacated the circuit's judgment. *Id.* at 392. It disagreed with the court of appeals' conclusion that the discovery requests were appropriate simply "because the Executive Branch can invoke executive privilege to maintain the separation of powers." *Id*. at 383. The court explained that "[e]xecutive privilege is an extraordinary assertion of power 'not to be lightly invoked.'" *Id.* at 389 (quoting *United States v. Reynolds*, 345 U.S. 1, 7 (1953)). "Once executive privilege is asserted, coequal branches of the Government are set on a collision course," as the "Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives." *Id.* "These 'occasion[s] for constitutional confrontation between the two branches' should be avoided whenever possible." *Id.* at 389–90 (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974)).

The court therefore explained that "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id.* at 385; *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (explaining that "[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery"). In those circumstances, courts must balance both the "party's need for information" and "the burden imposed by the discovery orders," recognizing that a discovery dispute that implicates separation-of-powers considerations "is not a routine" one. *Cheney*, 542 U.S. at 385; *see also Nixon*, 418 U.S. at 712–13 (weighing the "President's acknowledged need for

Case 1:25-cv-01888-AHA Document 101 Filed 11/10/26 Page 7 of 26

confidentiality in the communications of his office" against the "constitutional need for production of relevant evidence in a criminal proceeding").

The Supreme Court expressed concern about the scope of the particular discovery requests before it, explaining that "the breadth of the discovery requests" was "unbounded," that the plaintiffs asked for "everything under the sky," and that the discovery sought, in fact, would have given the plaintiffs "all the disclosure to which they would be entitled in the event they prevail on the merits, and much more besides." *Cheney*, 542 U.S. at 387–88. For example, the requests sought "[a]ll documents concerning any communication relating to the activities" of the energy policy task force, "the activities of any Sub-Groups, or the preparation of the Report" and "[a]ll documents identifying or referring to any staff, personnel, contractors, consultants or employees of the Task Force." *Id.* at 387. The court contrasted these requests with the subpoena order it had upheld in *Nixon*, which "'precisely identified' and 'specific[ally] . . . enumerated' the relevant materials." *Cheney*, 542 U.S. at 387 (quoting *Nixon*, 418 U.S. at 688 & n.5). And the court concluded that, in these circumstances, the discovery authorized by the district court was overly broad, and the Executive Branch should not "bear the onus of critiquing the unacceptable discovery requests line by line." *Id.* at 388.

In recognizing these concerns, the Supreme Court advised that lower courts considering overly broad discovery requests served on certain high-level executive branch officials are not left with "the sole option of inviting the Executive Branch to invoke executive privilege while remaining otherwise powerless to modify a party's overly broad discovery requests." *Id.* at 389. The court pointed to "sound precedent in the District of Columbia itself for district courts to explore other avenues, short of forcing the Executive to invoke privilege," giving the example of a court acting to "narrow, on its own, the scope of the subpoenas to allow the Executive 'to consider

whether to invoke executive privilege with respect to . . . a possibly smaller number of documents following the narrowing of the subpoenas.'" *Id.* at 390 (quoting *United States v. Poindexter*, 727 F. Supp. 1501, 1504 (D.D.C. 1989)).

This court reads *Cheney* as directing courts to carefully balance the import of the information sought to the plaintiff's claims against the burden imposed on the executive and, when confronted with overly broad discovery requests, to consider ways to narrow their scope. Although the parties debate whether *Cheney* is focused on overbreadth only to the extent the requests seek information that will require the invocation of executive privilege, or instead a more general concern for the burden imposed on a coordinate branch, the court need not resolve that question. Regardless of whether the information sought is privileged, the court exercises its discretion to manage discovery to proceed in a manner that carefully weighs the ABA's need for information against the burden on the executive, including by sequencing discovery in a manner that allows discovery to proceed in stages—even if that exercise of discretion goes beyond what *Cheney* demands at this stage.

**B. The Court Grants The ABA's Motion To Compel In Part And Denies It In Part**

Although most of the requests in this case pertain to a specific period and a defined universe of documents, and none of them are as broad as the "unbounded" requests the district court authorized in *Cheney*, the court still takes account of the special considerations present when, as here, "the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Cheney*, 542 U.S. at 385.

The court's determinations at this stage come after multiple efforts at narrowing the scope of the requests at issue. First, the court asked the parties for written proposals to narrow the requests, and it later suggested ways to narrow them further at multiple hearings. *See, e.g.*, ECF No. 57 at 2–3 (scheduling order); Minute Order (June 25, 2026); Minute Order (Aug. 3, 2026);

ECF No. 75 at 42 (hearing transcript). In response, the ABA proposed several ways to narrow its requests. The government did not, instead maintaining its blanket objections to the requests on the grounds that the contemplated discovery would "disrupt the functioning of the Executive Branch" and "raise substantial separation-of-powers concerns." ECF No. 67 at 5. Though the government acknowledged at a hearing that several of the court's own proposals to narrow the requests would be productive, it has declined the court's invitations to propose its own suggestions; the government has, however, acknowledged that the ABA's requests do not impose any practical burden beyond ordinary discovery burdens. *See* ECF No. 75 at 40–42, 53, 63–64.

The court finds it appropriate to exercise its discretion to further narrow the ABA's proposals, at least at this stage. Although the ABA may object that the court's further narrowing is not strictly required by *Cheney*, the court finds it prudent as a matter of discovery management to proceed with a more limited scope of discovery, such that any further discovery can be based on a showing that it is necessary and can be further tailored based on EOP's initial responses. *See* Fed. R. Civ. P. 26(b)(1) (requiring courts to consider "whether the burden or expense of the proposed discovery outweighs its likely benefit"); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (recognizing that Rule 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). Phasing discovery in this way may extend the discovery period to some degree, but the court finds that lengthening warranted to balance the important interests at play. *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 299–300 (D.C. Cir. 2020) ("[D]istrict courts have broad discretion in structuring discovery to limit unnecessary or overly burdensome requests." (quotation marks omitted)). And courts commonly phase discovery to carefully manage the burden placed on producing parties. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 176 (D.D.C. 2009).

Case 1:25-cv-01888-AHA Document 101 Filed 11/16/26 Page 10 of 26

The court considers the ABA's discovery requests in order, grouped when they raise common issues.

*1. Requests 1, 2, and 7*

The ABA's first, second, and seventh requests each seek documents that EOP exchanged with the third-party law firms that were targeted by the allegedly unlawful policy. Specifically:

- Request 1 seeks: "All communications on or after January 20, 2025 that You sent to, received from, or participated in with: a. Covington & Burling; b. Jenner & Block; c. Perkins Coie; d. Susman Godfrey; and/or e. Wilmer Hale. Please respond separately for each of (a), (b), (c), (d), and (e)."

- Request 2 seeks: "All communications on or after January 20, 2025 relating to any possible issuance of any Executive Order against any law firm, or to any Agreement with any law firm and the government, that You sent to, received from, or participated in with: a. Paul Weiss b. Skadden c. Wilkie Farr d. Milbank e. Kirkland & Ellis f. Allen Overy g. Simpson Thatcher h. Latham i. Cadwalader. Please respond separately for each of (a), (b), (c), (d), (e), (f), (g), (h), and (i)."; and

- Request 7 seeks: "All Agreements, created on or after January 20, 2025, between the Administration and any Settling Firm. To the extent that any Agreement is not memorialized in a single document, all records sufficient to show all terms of that Agreement."

ECF No. 61-1 at 14–15. The ABA argues that these requests, limited to communications or agreements with a small set of specifically identified firms that are central to their claims, bear no relation to the sweeping requests considered in *Cheney*. It also argues that the requests, by their terms, avoid materials subject to any claim of privilege because they all involve communications or documents that EOP shared with third parties. These points are well taken. It is clear these requests "stand on an altogether different footing" from the scope of the requests at issue in *Cheney*. 542 U.S. at 386. Indeed, these requests "precisely identif[y]" the materials sought—communications and documents that are limited to a small number of specifically enumerated law firms, during a particular time period. *Id.* at 386–87; *see* ECF No. 61-1 at 7–8 (defining "Settling Firms," as used in request 7, to include nine law firms); *see also Citizens for Resp. & Ethics in*

*Wash. v. U.S. Dep't of Homeland Sec.*, 532 F.3d 860, 867 (D.C. Cir. 2008) (explaining that a FOIA request "narrowly drawn, targeting nine specific individuals" had "little in common with the broad discovery order at issue" in *Cheney*). There is no basis to think requests 1, 2, and 7 are the type of requests that would require "the President, Vice President, or their staffs to sort through mountains of files for responsive documents," and the government does not argue otherwise. *Citizens for Resp. & Ethics in Wash.*, 532 F.3d at 867; *see also Cheney*, 542 U.S. at 387 (emphasizing that the "specificity of the . . . requests serves as an important safeguard against unnecessary intrusion into the operation of the Office of the President"). It is also true that responses to these requests would not set off any "collision course" in which the judicial branch "is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives" because the requests seek only documents that have already been shared with third parties outside of EOP. *Cheney*, 542 U.S. at 389. Indeed, the government does not dispute these points—it does not argue these requests are overly broad or suggest they should be further narrowed in any way, and it has not argued the requests would yield materials likely to be subject to executive privilege. *See* ECF No. 75 at 47, 49–51 (government counsel saying it did not have any narrowing to propose). To the contrary, the government appears to concede it would not have any basis to withhold these documents based on privilege. *See id.* at 49–50 (acknowledging the ABA is "certainly entitled to whatever information" in the law firms' possession that is responsive to these requests); ECF No. 67 at 9–10 (not contesting the ABA's argument that no privilege would apply to these documents).

On the other side of the ledger, the government does not dispute these requests are relevant to, and indeed central to, the ABA's claims that the government adopted and carried out a policy of retaliating against firms based on their speech and representations. *See* ECF No. 67 at 12;

*Cheney*, 542 U.S. at 385 (directing the court to balance a "party's need for information" against "the burden imposed by the discovery orders"). The ABA's First Amendment retaliation claim, for example, concerns whether the government made "coercive threats aimed at punishing or suppressing disfavored speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 197 (2024); *see* ECF No 1 ¶¶ 206–21. The communications sought in requests 1, 2, and 7 are directly relevant to whether the government made "threat[s] of retaliatory sanctions" against law firms that would have "deterred ABA members and their law firms from engaging in First Amendment protected activity." ECF No. 1 ¶ 218; *see id.* ¶ 216 (alleging specific types of threats); *see also, e.g.*, *Johnson v. District of Columbia*, 182 F.4th 1052, 1059 (D.C. Cir. 2026) (considering email communications in the context of a First Amendment retaliation claim). And the ABA's viewpoint discrimination claim turns in part on whether "the specific motivating ideology or the opinion or perspective of the speaker" was the government's "rationale" for the alleged law firm policy. *Rosenberger v. Rector of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see* ECF No. 1 ¶¶ 222–30. The communications and the agreements these discovery requests seek are likely to be competent, probative evidence of the government's motivations for the alleged policy, including whether its action was designed "to suppress disfavored First Amendment protected activity of the ABA and its members" and was "based on viewpoints held by the ABA and by ABA members and their law firms." ECF No. 1 ¶¶ 210, 225; *see, e.g.*, *Media Matters for Am. v. FTC*, No. 25-5302, 2025 WL 2988966, at *8 (D.C. Cir. Oct. 23, 2025) (discussing the role of circumstantial and direct evidence of "the defendant's expression of hostility to the protected speech" in the context of First Amendment claims).

The government's sole counterargument is that *Cheney* favors obtaining this information from the third-party law firms themselves rather than EOP. *See* ECF No. 67 at 9; ECF No. 75 at 47, 51–52. The government represents that "in keeping with *Cheney*, Defendants have now

subpoenaed each of these law firms to obtain the documents that Plaintiff has requested." ECF No. 67 at 9. In July 2026, the government served third-party subpoenas on the firms seeking "[a]ll communications on or after January 20, 2025 reflecting or relating to any Agreement(s), including any negotiations relating to any Agreements, and any communications concerning the implementation, enforcement, or monitoring of such Agreements" and "[a]ll communications on or after January 20, 2025 relating to any Law Firm Executive Order." ECF No. 67-1 at 18, 35, 52, 69, 86, 103, 120, 138, 155, 172, 189, 206, 223, 240. At a hearing at the end of that month, the government proposed that, instead of searching its own materials for the documents, it be permitted to work diligently to obtain the documents from the firms through these subpoenas, after which it will share the documents with the ABA. *See* ECF No. 75 at 47–48, 50 (counsel representing that the government is "working with the law firms who have received the subpoenas to obtain" the information requested by requests 1, 2, and 7 and that the ABA is "certainly entitled to whatever information we obtain from the law firms"). The government also represented that it had agreed to give the law firms twenty-one days to respond to their subpoenas and committed to "engage and figure out how soon we can get that material" and keep the court apprised of any updates. *Id.* at 47, 57. The ABA noted that the government's third-party subpoena differed in scope from their discovery requests but might "cover the core conduct of [requests] 1 and 2 and 7." *Id.* at 48.

On consideration of these representations, the interests recognized in *Cheney*, and the court's own discretion to manage discovery, the court adopts the government's request for it to diligently pursue responses to the third-party subpoenas it served on law firms, such that EOP could exclude any documents received directly from the firms from its own responses. *See id.* at 47–50; ECF No. 100 at 8. The court accordingly grants in part and denies in part the ABA's motion to compel a response to requests 1, 2, and 7. At the July 2026 hearing, the government informed

the court that it had extended the 15-day response period in the third-party subpoenas, giving the law firms a few weeks to respond, and confirmed it would keep the court and the ABA apprised of all progress. ECF No. 75 at 49–57. At a more recent hearing about other discovery matters, the government represented it had received only a small number of responsive materials from law firms and had not been in recent contact with the firms. ECF No. 100 at 5–7. The government indicated it was "still evaluating next steps" to get responsive materials from the law firms and has "not foreclosed pressing [the law firms] for further documents." *Id.* at 6–7. Given that several months have passed since the July 2026 hearing, the court will give the government until December 28, 2026, to obtain and provide to the ABA the documents it has asked for the opportunity to seek directly from the law firms. Consistent with the government's position, the court will not require the government to provide responses to the ABA's discovery requests as to documents that it has obtained from law firms and provided to the ABA by that date; the government shall then respond as to all other documents in its possession that are responsive to requests 1, 2, and 7.

The court also considers, on its own initiative, ways to narrow the scope of these requests, and it finds that the ABA's need for the evidence will not be compromised by further narrowing of the requests at issue in two ways. First, the court narrows request 1 to exclude communications with those firms that are not relevant to the ABA's claims. *See* ECF No. 75 at 46 (ABA agreeing that including this limitation "would work certainly"). Second, the court finds it appropriate, at least at this stage, to further narrow the time period for requests 1 and 2. *See* ECF No. 75 at 46–47, 51–52 (the court proposing this idea). As to request 1, which relates to law firms that were allegedly targeted by the government but did not ultimately enter into an agreement with it, the court limits the request to communications between January 20, 2025, and April 30, 2025. The last law-firm agreement the ABA identifies was announced on April 11, 2025. *See* ECF 1 ¶¶ 140–41.

Although communications after April 2025 would be relevant to the ABA's claims, the court finds it prudent to limit the period of search to this approximately three-month period in light of the burdens on the government from a broader search and absent any indication that any communications with the identified law firms continued past April. As to request 2, which relates to law firms that the ABA alleges entered into an agreement with the government, the court limits the request to communications between January 20, 2025, and June 30, 2025. As to these firms, communications in the months after a firm and the government reached an agreement bear on how those agreements were interpreted and implemented. But here too, the court finds it prudent to set an outer bound on the search period in light of the burdens to the government and the absence of any indication that there are relevant communications with the identified law firms after June 2025.

Request 7 concerns a very narrow and specifically defined set of documents that are central to the ABA's claims: the agreements the government made with the settling law firms. The government has not suggested that these agreements, which it acknowledges were made and shared with third parties, implicate executive privilege concerns or would be particularly burdensome to produce. *See* ECF No. 67 at 9 (the government stating that it has "subpoenaed each of these law firms to obtain the documents that Plaintiff has requested"). And to the extent the government understands request 7 to extend even to elements of any agreement that are not captured in any document or record, requiring "deposition testimony of the managing partners of these firms," *id.*, the court construes the request as limited to documents or records that capture, in whole or in part, agreements with settling law firms.

Accordingly, with the exception of documents the government obtains directly from law firms and provides by December 28, 2026, the government shall respond to the following requests, as further narrowed by the court:

- Request 1, as tailored by the plaintiff, the court, and the government's subpoena requests: All communications between January 20, 2025 and April 30, 2025 relating to any possible issuance of any Executive Order against any law firm, or to any Agreement with any law firm and the government that You sent to, received from, or participated in with: a. Covington & Burling; b. Jenner & Block; c. Perkins Coie; d. Susman Godfrey; and/or e. Wilmer Hale. Please respond separately for each of (a), (b), (c), (d), and (e).

- Request 2, as tailored by the plaintiff, the court, and the government's subpoena requests: All communications between January 20, 2025 and June 30, 2025 relating to any possible issuance of any Executive Order against any law firm, or to any Agreement with any law firm and the government, that You sent to, received from, or participated in with: a. Paul Weiss b. Skadden c. Wilkie Farr d. Milbank e. Kirkland & Ellis f. Allen Overy g. Simpson Thatcher h. Latham i. Cadwalader. Please respond separately for each of (a), (b), (c), (d), (e), (f), (g), (h), and (i).

- Request 7, as construed by the court: All Agreements, created on or after January 20, 2025, between the Administration and any Settling Firm. To the extent that any Agreement is not memorialized in a single document, all records sufficient to show all terms of that Agreement.

*2. Requests 3, 4, 5, and 6*

The ABA's third, fourth, fifth, and sixth discovery requests seek communications between the government and third-party individuals. Specifically, these requests seek all communications on or after January 20, 2025, with two individuals, Boris Epshteyn and Steve Bannon, "relating to the possible issuance of any Executive Order against any Law Firm" or "reflecting negotiations relating to any Agreements" as to those two individuals. ECF No. 61-1 at 14–15.

The ABA moves to compel a response to these requests and, in response, the government does not argue that *Cheney* applies. At one of the court's discovery conferences, the government explicitly waived any invocation of *Cheney* in response to these requests, taking the position that the ABA had satisfied any obligation to "explore other avenues" for obtaining the information and confirming: "We're past the *Cheney* stage, and we're going to litigate whether we satisfy the privilege or whether a privilege can be overcome." ECF No. 75 at 37–38, 54–55. Given the government's affirmative concession that it must respond, the court finds it unnecessary at this

Case 1:25-cv-01888-AHA Document 101 Filed 11/16/26 Page 17 of 26

juncture to compel such a response. The court therefore denies the motion to compel responses to these requests as moot.

*3. Requests 8 and 14*

The ABA's eighth and fourteenth document requests seek communications involving offices and agencies within EOP and other agencies. Request 8 seeks "[a]ll records created on or after January 20, 2025 related to the terms of the Administration's Agreements with any Settling Firm, including all communications between or among the White House, the Office of Management and Budget ('OMB'), the EEOC, and/or the U.S. Department of Justice ('DOJ'), concerning the Agreements or terms thereof." ECF No. 61-1 at 15. Request 14 seeks "[a]ll documents and communications exchanged with Agency Defendants relating to the implementation, interpretation, and/or enforcement of any Law Firm Order." *Id.* at 16.

The court denies the motion to compel EOP's response to these requests. In the course of the court's effort to narrow the requests, the ABA agreed to first obtain responsive documents from other defendant agencies. ECF No. 61 at 18–19. The court agrees this approach best balances the important interests at stake, allowing the plaintiff to obtain the documents in the first instance from defendants that do not raise the important considerations discussed in *Cheney* and, to the extent necessary thereafter, make tailored requests to EOP based on specific information received in the first phase. The government agreed to this phased approach. *See* ECF No. 75 at 44 (government agreeing that "a phased approach of focusing on other defendant agencies" and "getting the discovery there" first is "the proper procedure"); *id.* at 40 (government agreeing that after the ABA first obtains documents from agency defendants, it can "figure out what [it] still need[s] to prove up [its] case, and then [it] would be able to articulate why [it] need[s]" such documents from the White House); *see also id.* at 57 (the ABA indicating it is "fine phasing it that way").

*4. Requests 9 and 13*

The ABA's ninth and thirteenth document requests seek:

- Request 9: "All records created on or after January 20, 2025, related to the issuance of any Law Firm Order."
- Request 13: "Documents of 'President Trump's policy team' relating to 'executing on [President Trump's] directive to hold Big Law accountable for their weaponization of justice and their lies,' as referred to in the statements of White House Press Secretary Karoline Leavitt set forth in ¶146 of the Complaint."

ECF No. 61-1 at 15–16. The ABA has since proposed ways to narrow both requests. It has proposed limiting request 9 to the following types of records related to issuance of the law firm orders: "(1) all drafts of Law Firm Orders, including any redlines, edits, and comments thereto, however communicated, and including communications transmitting such drafts, redlines, edits, and comments; (2) emails that refer to any of the firms who received a Law Firm Order and the word 'EO' (or other synonyms used to refer to an Executive Order); (3) all memoranda related to the issuance or prospective issuance of Law Firm Orders, including drafts thereof and communications transmitting and responding to such memoranda; (4) all notes from meetings at which the issuance of any Law Firm Orders was discussed." ECF No. 61 at 16. And the ABA proposes narrowing request 13 to "(1) all memoranda related to President Trump's directive to 'hold Big Law accountable for their weaponization of justice and their lies,' including drafts thereof and communications transmitting and responding to such memoranda; (2) emails that refer to or discuss the President's directive; and (3) all notes from meetings at which the directive was discussed." *Id.* at 18.

The court finds it appropriate to further limit these requests in three respects to significantly reduce the government's burden in responding. First, the court will not order EOP to respond to either request for notes from meetings at which the issuance of law firm orders or the policy

directive were discussed. Although such responses would likely be warranted in the ordinary incidents of discovery given the nature of the claims here, the interests recognized in *Cheney* counsel otherwise. 542 U.S. at 381–82 (recognizing that the interests of the executive "remove this case from the category of ordinary discovery"); *see also Jud. Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (explaining that "handwritten notes reflecting preliminary thoughts of agency personnel" are "deliberative material" whose disclosure "inhibits open debate and discussion, and has a chilling effect on the free exchange of ideas"), *aff'd*, 76 F.3d 1232 (D.C. Cir. 1996). To the extent the ABA later has a particularized basis for seeking such notes after the first phase of discovery, it can renew its request on that more targeted basis.

Second, the court finds it appropriate to adopt the ABA's proposal of narrowing the types of responsive documents from all relevant "records" and "documents" to a specified list of materials, including drafts of the law firm orders, their markup, and their transmittal correspondence (as to request 9); and memoranda, their drafts, and their transmittal correspondence and responses, related to the issuance of the law firm orders and policy directive (as to requests 9 and 13). *See* ECF No. 61 at 15–18. The court finds that requiring the government to respond to the requests for these drafts, memoranda, and transmittal materials entails a narrow and well-defined set of documents, considerably limiting the burden of responding. As the ABA notes, documents the government previously produced include references to specific, potentially responsive memoranda. *See id.* at 15–16; ECF No. 61-4 at 7, 12. And this limited discovery is central to the ABA's claims. For example, drafts of the law firm orders will reveal how the language in those orders changed over time, which may shed light on the government's motivation in issuing the orders and the desired effect of the orders on the law firms. Memoranda accompanying the law firm orders and agreements may also articulate the government's goals and

analysis, and the existence of memoranda formalizing the government's objective could establish the existence of a policy of intimidation. The court appreciates that some, even many, of the documents in this limited universe may yield valid claims of privilege. At this stage, however, the court's task is to take care to limit the burden of responding on a coordinate branch, which includes limiting the universe of documents over which the executive must assert privilege, given the needs of the case. The court has taken considerable effort to do so, including further narrowing these requests on its own accord. *See Cheney*, 542 U.S. at 389.

Third, the court substantially narrows the ABA's requests for emails, for requests 9 and 13. Again, although such responses, especially as narrowed by the ABA, could be readily justified as the ordinary incidents of discovery for the types of claims at issue, the interests recognized in *Cheney* compel the court to proceed in a more circumscribed way. 542 U.S. at 381–82; *see also Jud. Watch, Inc.*, 880 F. Supp. at 13. For both requests, the court will substantially cabin the time period, requiring responses only to a more cabined universe of records. As to request 9, the court will further restrict responses to emails that refer to any of the firms who received a law firm executive order as well as the word "EO" (or other synonyms used to refer to an executive order) and that were sent within twenty-one days before or after the issuance of each law firm executive order. As to request 13, the court will further restrict responses to emails that refer to or discuss the relevant policy directive that were sent during a sixty-four-day period, from February 13, 2025, to April 18, 2025—twenty-one days before the first law firm order until seven days after the last alleged law firm agreement. *See* ECF No. 1 ¶¶ 69, 141. To be sure, as the ABA points out, these requests are already particularized—with request 9 being explicitly limited to emails discussing five law firms and request 13 being explicitly limited to a particular policy directive—and documents outside of the court's time frame could be relevant to the ABA's claims of a retaliatory

and view-point discriminatory policy. But the court finds that proceeding in this more limited fashion balances the centrality of these documents to the ABA's claim with the burden on the government in responding, by providing a more defined universe of documents that targets those emails that are most directly relevant in the first instance. To the extent the ABA has a particularized need for seeking a response beyond the court's more narrowed scope after the first phase of discovery, it can renew its request on that more targeted basis.

*5. Request 10*

Request 10 seeks "[d]ocuments sufficient to show all facts considered and information relied on in issuing any Law Firm Order." ECF No. 61-1 at 15.

The court denies the ABA's motion to compel a response to request 10 without prejudice. The court inquired into the basis for this request during its July 2026 discovery conference, and the ABA explained that the request was largely intended to ensure the government provides all documents it intends to rely on in its defense of the challenged policy. ECF No. 75 at 60. The government would then be precluded, the ABA says, from claiming "some other factual basis" for the alleged policy "that it didn't disclose" in its production. *Id*. The government acknowledged its duty to produce any responsive documents that it plans to rely upon itself and argued that the Federal Rules of Civil Procedure would preclude it from relying on information or documents that were not timely produced during discovery. *Id.* at 61–62. The government pointed to Rule 26, which requires a party to provide the other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). That rule also obligates parties to supplement or correct disclosures that are incomplete or incorrect. Fed. R. Civ. P. 26(e)(1). And, consistent with the government's representation, another rule says

that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Consistent with these obligations, the government represented that it will timely produce or assert privilege over all documents responsive to the requests it must respond to. ECF No. 75 at 61–62. The court appreciates the ABA's desire to cover all bases during discovery and therefore denies the motion to compel a response to this request without prejudice to being renewed at a later stage in a tailored fashion—for example, based on specific indications there are responsive documents the government has not produced or asserted privilege over.

*6. Requests 11 and 12*

The ABA's eleventh and twelfth document requests seek documents needed to identify people with information about the challenged policy. Request 11 seeks "[d]ocuments sufficient to identify all individuals who participated in the drafting, editing, publishing, review, or approval of Law Firm Orders, including who first proposed the idea, who drafted the orders, who reviewed them, and who approved them." ECF No. 61-1 at 15. Request 12 seeks "[d]ocuments sufficient to identify the members of 'President Trump's policy team' who are involved in 'executing on his directive to hold Big Law accountable for their weaponization of justice and their lies,' as referred to in the statements of White House Press Secretary Karoline Leavitt set forth in ¶146 of the Complaint." *Id.*

In the course of the court's efforts to narrow the scope of requests, the government repeatedly offered that it should simply be asked for a list, rather than providing documents for the purpose of identification. In correspondence with the ABA, the government proposed that these document requests "be narrowed by posing the request as an interrogatory as opposed to a broader

and more burdensome document request." ECF No. 61-3 at 1. At the July 2026 discovery conference, the court explored the same, explaining that narrowing the requests to require only a list of the names of individuals at issue would reduce the executive branch's burden of responding to the requests while also potentially helping to provide information that could be used to narrow other requests, and the government agreed that this would be an effective means of reducing the burden on the government with respect to this and potentially other requests. ECF No. 75 at 64–65; *see id.* at 42 (government agreeing that "one way of narrowing" is by "seeking the identity of certain individuals, custodians that are better suited for interrogatories"). The government also took the position that posing a question in an interrogatory versus requesting a document was meaningfully different under *Cheney* because it avoids providing more information than is needed to identify the individuals with information relevant to the plaintiff's claims. *Id.* at 63 (government explaining that "whether it's an interrogatory as opposed to a document request, it does change as far as *Cheney* goes, because a document request seeking identities of individuals . . . means we're providing them documents that will inherently include extraneous information beyond just the identities themselves, so that's overbroad").

Consistent with the government's request, the court narrowed these requests and directed the government to "file a notice with the court identifying the names of the individuals at issue for Requests 11 and 12." Minute Order (Aug. 3, 2026). In doing so, the court made clear the government maintained the prerogative to assert privileges and "explain the basis for the privilege, including the relevant legal authorities and required evidentiary basis to support the privilege." *Id.*; ECF No. 75 at 64–65. The government filed a responsive notice, taking the position that the presidential communications privilege covers the names of the individuals with information about the challenged policy. *See* ECF No. 79 at 2; ECF No. 79-1 ¶ 5. Because the government has already

Case 1:25-cv-01888-AHA Document 101 Filed 11/16/26 Page 24 of 26

responded to these requests, as narrowed, the ABA's motion to compel a response to requests 11 and 12 is denied as moot.

*7. Requests 15 and 16*

The ABA's fifteenth document request seeks "[s]ocial media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement." ECF No. 61-1 at 16. And its sixteenth request seeks "[n]otes and communications related to any public statements, press release, signing ceremony, and/or media or press interview related to any Law Firm Order or Agreement, including those cited in" various paragraphs of the complaint. *Id.*

The court denies without prejudice the ABA's motion to compel the government to respond to requests 15 and 16. The court concludes that request 15 is "overly broad." *Cheney*, 542 U.S. at 386. Compliance with this request would require the government to sort through White House social media posts and direct messages to determine whether they discuss or relate to the law firm executive orders or agreements. The request does not "precisely identif[y]" or "specific[ally] enumerate[]" the relevant materials—it does not identify specific social media posts, platforms, or accounts. *Cheney*, 542 U.S. at 387. And although the ABA has indicated it is willing to narrow the request to identify no more than seven custodians, it also says it "does not know the identity of those individuals responsible for the Law Firm orders or the negotiation of Agreements" at this point in the discovery process. ECF No. 61 at 15. When the court directed the government to provide the custodians for this request as a way of narrowing the request, the government asserted the presidential communications privilege over the names of any individuals in the White House involved in those orders and negotiations. *See* ECF No. 79 at 11–12. The court leaves open the possibility that the ABA may renew its motion at a later stage when it has additional information that may be helpful to narrow the request.

As to request 16, the ABA proposes narrowing its request to cover "only those public statements identified in the complaint and cross-referenced in [request 16]—which include, for example, statements made during signing ceremonies for specific Law Firm Orders." ECF No. 61 at 18. But weighing the ABA's need for information against the burden imposed by the proposed discovery, the court concludes that the ABA's motion to compel the government to respond to request 16 must also be denied. *See Cheney*, 542 U.S. at 385; Fed. R. Civ. P. 26(b). At least at this stage, the ABA has not shown a specific need for notes and communications related to statements that are already publicly available. Notes and communications related to how the government publicly described its actions are less directly relevant to showing a law firm intimidation policy than documents relating to how the government devised and carried out the alleged policy. And requiring the government to respond to this request would be particularly intrusive. The government has identified the President himself as a custodian for this request, given that the President made several of the public statements identified in the complaint. *See* ECF No. 79 at 12.[1]

## III. Conclusion

For these reasons, the ABA's motion to compel the government's response to the ABA's requests for production Nos. 1–16, ECF No. 61, is granted in part and denied in part. The court denies the motion as moot as to requests 3, 4, 5, 6, 11, and 12; denies the motion without prejudice as to requests 8, 10, 14, 15, and 16; and grants the motion as to narrowed forms of requests 1, 2, 7, 9, and 13. By December 4, 2026, the parties shall meet and confer to negotiate reasonable search

---

[1] The government asks the court to stay any order authoring discovery to allow the government to explore whether to appeal. *See* ECF No. 67 at 19. That request is denied as premature. If, after reviewing this opinion and order, the government decides to pursue an appeal, it may move for a stay pending appeal, and the court will consider that request in the ordinary course.

terms and other parameters, and file a joint status report proposing a feasible schedule for the government to respond to those requests.

AMIR H. ALI
United States District Judge

Date: November 16, 2026