Danielle Leonard (SBN 218201)
Connie K. Chan (SBN 284230)
Anita T. Alem (SBN 353683)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax: (415) 362-8064
dleonard @altber.com
cchan@altber.com
aalem@altber.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

Defendants.

Case No. 3:25-cv-03070-JD

**JOINT STATEMENT RE: DISCOVERY**

Pursuant to the discussion with the Court regarding discovery at the status conference held on November 19, 2026, Plaintiffs American Federation of Government Employees, AFL-CIO, *et al*. and Defendants President Donald J. Trump, *et al.* submit this joint statement. Subsequent to the conference, as ordered by the Court, the parties met and conferred through counsel regarding potential discovery, but were unable to reach agreement. Plaintiffs request the Court approve the issuance of three interrogatories, which Defendants oppose. The parties' respective positions are set forth below.

*Plaintiffs' Position:*

As set forth in prior briefing and discussed at the November 19 status conference, Plaintiffs' position is that discovery in this case should proceed with respect to all claims challenging Executive Order 14251 as ultra vires and in violation of the First and Fifth Amendments. Plaintiffs understand that the Court will consider Defendants' renewed motion to dismiss, to be filed per the briefing schedule set at the conference, before considering discovery with respect to the ultra vires claims. The Court indicated at the conference that third party discovery can proceed, and that the Court would potentially permit some other staged discovery at this time. Plaintiffs explained that they would seek discovery focused on Plaintiffs' First Amendment claims, and in particular on the issue of communications between the White House (or others at the Executive Office of the President, the Office of Management and Budget ("OMB"), the Office of Personnel Management ("OPM"), or the Department of Government Efficiency ("DOGE")), and third parties regarding Executive Order 14210.

Accordingly, after the conference, Plaintiffs proposed three limited interrogatories to Defendants, which pertain to Plaintiffs' First Amendment claims, while reserving the right to issue further requests for admission or request further discovery from the Court as needed. Those interrogatories include:

1. Identify all employees or officials from the Executive Office of the President, OPM, OMB, or DOGE, involved in any communications with any person(s) who are not employed by the federal government regarding Executive Order 14251 in whole or part, including with respect to exclusions from collective bargaining under Chapter 71 pursuant to 5 U.S.C. § 7103(b) or any exceptions to those exclusions, between the dates January 20, 2025 and April 30, 2025.

2. Identify person(s) who are not employed by the federal government with whom any employee or official from the Executive Office of the President, OPM, OMB, or DOGE communicated regarding Executive Order 14251 in whole or part, including with respect to exclusions from collective bargaining under Chapter 71 pursuant to 5 U.S.C. § 7103(b) or any exceptions to those exclusions, between the dates January 20, 2025 and April 30, 2025.

3. Identify the dates and method of communication (telephone, video-conference, e-mail, in person meeting, etc.) for any communication between, on the one hand, any person(s) who are not employed by the federal government, and on the other, any employee or official from the Executive Office of the President, OPM, OMB, or DOGE, regarding Executive Order 14251 in whole or part, including with respect to exclusions from collective bargaining under Chapter 71 pursuant to 5 U.S.C. § 7103(b) or any exceptions to those exclusions, between the dates January 20, 2025 and April 30, 2025.

The parties' subsequent efforts to meet and confer and reach agreement were unsuccessful, as Defendants maintained their position that no discovery was appropriate at this time.

Plaintiffs seek information regarding communications between the individuals responsible for the content of the Executive Order, and third parties that Plaintiffs contend were treated more favorably in the Order. (By way of example, Plaintiffs provided the Court at the November 19 conference with a document from the Fraternal Order of Police, in which it revealed that it was involved in "discussions" with individuals from the White House prior to issuance of the Order that protected collective bargaining rights for that union's members but not Plaintiffs). Plaintiffs do not know the identity of the third parties with whom the White House discussed this Order, or the timing or scope of these communications, and seek this limited information at this stage to facilitate seeking discovery from the third parties with whom the Administration communicated.

Plaintiffs' interrogatories are very narrowly tailored. Plaintiffs' interrogatories do not seek any documents, span only a three-month period, and are addressed toward a limited set of Defendants. Plaintiffs seek only the identification of individuals involved in any communications with non-governmental actors about the Order, and the dates and method of those communications. This information goes directly to Plaintiffs' First Amendment claims and in particular is relevant to Plaintiffs' allegation that the Order retaliates and discriminates against Plaintiffs, while providing more favorable treatment to those unions that are perceived to support the Administration's policies.

This discovery does not investigate any national security-related issues. Plaintiffs' requests are reasonable and appropriately tailored to this stage of the litigation. Plaintiffs therefore respectfully request that the Court grant and approve Plaintiffs issuing these very limited interrogatories.

Defendants' position below ignores that the Federal Rules do not stay discovery pending the resolution of pleadings motions. Blanket stays are disfavored, and this Court has repeatedly held, consistent with blackletter law, that Defendants bear a "heavy burden to make a strong showing to justify the stay." *Lofton v. Bank of Am. Corp.*, No. C 07-05892, 2008 WL 2037606, at *1 (N.D. Cal. May 12, 2008) (quotation omitted); *accord Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). The general rule does not differ where the federal government, or even the President, is the defendant. *See, e.g.*, *AFGE v. Trump*, N.D. Cal. Case No. 25-cv-03698-SI, Dkt. 228 at 4-5 (July 25, 2025 Order) (rejecting request to stay discovery pending resolution of motion to dismiss).

Defendants are not correct that the Supreme Court's decision in *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004), altered this rule in the context of cases challenging actions of the President or his advisors in the Executive Office of the President or agencies like OPM, OMB, or DOGE—in fact, *Cheney* did not address this issue at all. Defendants also overread *In re United States*, 583 U.S. 29 (2017), which addressed whether an administrative record should be completed prior to a pleadings motion, and which also does not require district courts to stay discovery pending consideration of *any* threshold arguments—there the Court was concerned with jurisdiction and reviewability. *Id.* at 32. Here, this Court and the Ninth Circuit have already conclusively rejected Defendants' jurisdictional challenge, *AFGE v. Trump*, 178 F.4th 456, 465-66 (9th Cir. 2026); Dkt. 60 at 15-16, and Defendants repeated these rejected arguments in their motion to dismiss, Dkt. 92 at 4-5. While Defendants have raised reviewability with respect to Plaintiffs' ultra vires claims, the law is clear that even discretionary decisions by the President are subject to the Constitution and Plaintiffs' First Amendment claims (*see* Dkt. 60 at 20). Moreover, Defendants' motion to dismiss arguments aimed at the First Amendment claims (arguments that are repeated below), relied on the incorrect conclusion that the Ninth Circuit somehow foreclosed those claims in resolving the preliminary injunction, when it unambiguously did not (Dkt. 92 at 11-13). This Court's prior preliminary injunction was reversed "on the record as it now stands," leaving the *facts* for development in this

court. *AFGE*, 178 F.4th at 467.[1] The three narrow interrogatories Plaintiffs now seek to propound pertain directly to these First Amendment claims and are a modest, narrowly tailored set of requests to permit Plaintiffs to investigate the important and central question of whether Defendants used this Executive Order to treat people differently based on perceived political support.

The principles in *Cheney* that caution district courts to give due accord to separation of powers when seeking discovery from high-ranking federal officials are respected by proceeding with narrowly tailored requests. Plaintiffs' three interrogatories pass that test. Defendants' contention that the requests would require identifying and logging months of communications ignores counsel's ability to *talk to their clients* and gather information regarding who engaged in communications outside the government (and even so, running keyword searches of emails is not a difficult task in the modern world). If there are responsive communications outside the government in the short window of time before and after the issuance of the Executive Order, there is no reason to withhold that information. Defendants also complain that the requests go beyond unions, but none of Defendants' outside communications are actually privileged, and Plaintiffs do not know if the Administration made contact through intermediaries (which it frequently has done in other contexts).

Finally, Defendants are wrong to claim that Plaintiffs make no showing of the need to seek this information now: Defendants' actions are responsible for the elimination of important rights to over a million federal employees, and every day that this case continues without resolution imposes significant harm. Plaintiffs' explanation of the harm caused to Plaintiffs and the employees they represent that supported the original injunction is more than sufficient explanation for why Plaintiffs seek to urgently move this case forward, even pending the resolution of what Plaintiffs will demonstrate in the coming months to be a meritless motion to dismiss. Dkt. 60 at 22-25.

---

[1] As that court held in assessing Plaintiffs' claims of retaliation: "We need not infer the most jaundiced, retaliatory account of the President's actions without greater support in the record." *AFGE*, 178 F.4th at 462 (emphasis added); *see also id.* at 466 ("on this record"); id. at 468 ("[o]n this record"); *id.* at 469 ("on the current record"). Judge Owens noted in concurrence that the "fully developed factual record may be materially different from that initially before the district court." *Id.* at 469.

*Defendants' Position:*

Defendants maintain that no discovery is appropriate in this matter and certainly not before the Court resolves the threshold issues that will be presented in Defendants' forthcoming refiled motion to dismiss. *See* Defs.' Disc. Br., ECF No. 94 ("Defs.' Br."). Plaintiffs' claims fail on legal grounds—for which no discovery is necessary—and based on the Ninth Circuit's conclusion that Executive Order 14,251 "discloses no retaliatory animus" and that the "President's primary—if not only—concern with union activity was its interference with national security[.]" *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 178 F.4th 456, 467 (9th Cir. 2026). And, while Plaintiffs here attempt to litigate the merits of the forthcoming motion regarding their *ultra vires* and First Amendment claims, *see supra* at 3–4, the question at hand is whether discovery is necessary or appropriate while the Court considers these weighty issues. It is not.

Instead, the Supreme Court's precedents governing the significant limitations on discovery directed to the Executive Office of the President (including *Cheney*) advise that district courts should resolve threshold legal issues prior to ordering discovery in these circumstances, even to the extent doing so would narrow claims and eliminate unnecessary intrusions upon the Executive. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004); *see also In re United States*, 583 U.S. 29, 32 (2017) (District Court should resolve threshold issues presented in motion to dismiss prior to ordering discovery); *In re Musk*, No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025) ("district court was required to decide [the Government's] motion to dismiss before allowing discovery" on the Executive Office of the President, including DOGE (citing *Cheney*, 542 U.S. at 389–90)). Given the separation of powers concerns present in these situations, the Supreme Court made clear that discovery into the actions of the President and his close advisors should be permitted only as a last resort, that district courts must "explore other avenues" to avoid it, and that courts must ensure that any permitted discovery is "precisely identified" and no broader than necessary to serve its purpose. *Cheney*, 542 U.S. at 387, 390.

Further, Plaintiffs re-served interrogatories are not the "narrowly tailored" requests they claim. They seek information from the heart of the Executive Office of the President which the Supreme Court advised courts should avoid so as not to set "coequal branches of the Government . . .

on a collision course." *Cheney*, 542 U.S. at 389. For example, Plaintiffs' re-served interrogatories would put the Executive Office through the burden of identifying and logging months of communications from employees across the Executive Office—including communications from the President himself and his closest advisors—which are precisely the "burdens imposed on the Executive Branch" that the Supreme Court advised that "courts should be mindful of[.]" *Id.* at 391. While Plaintiffs claim that the exercise of canvasing the entire Executive Office of the President, up to and including the President himself, to interrogate who spoke to whom and when on the broad topic of this action is not so burdensome, they are incorrect and such an interference with the operations of the Executive is exactly the hinderance *Cheney* sought to avoid.

All of Plaintiffs' requests face similar problems. As Defendants noted in their discovery brief, any document or communication post-dating the Executive Order published on March 27, 2025, "could not have played a role in its issuance." Defs.' Br. at 10. And while Plaintiffs will argue that seeking communications after a relevant event may be common practice in discovery, *Cheney* reminds that "[t]his is not a routine discovery dispute." *Cheney* 542 U.S. at 385. Nor have Plaintiffs demonstrated that they cannot obtain this information from third parties prior to burdening the Executive, even though *Cheney* requires "explor[ing] other avenues" for obtaining the information first. *Id.* at 390. While Plaintiffs claim they do not know the relevant third parties, the universe of public sector unions is small and known to the Plaintiff unions, especially those that Plaintiffs claim were treated more favorably, as demonstrated by the fact that they have already sent subpoenas to the Fraternal Order of the Police and the International Brotherhood of Teamsters. But worse, Plaintiffs' requests go beyond "narrowly tailored" to relevant unions by seeking information from the overly broad category of unspecified third parties "not employed by the federal government" with whom communications were had "regarding Executive Order 14251 in whole or part" without demonstrating the relevance of such parties, the need for such communications, or how they might relate to Plaintiffs' claims. Far from narrowly tailored, even were discovery appropriate—and it is not—the Court would be obliged to "narrow, on its own, the scope of" Plaintiffs' requests. *Cheney*, 542 U.S. at 390.

Finally, and perhaps most fatally to Plaintiffs' claims, they have made no showing why this discovery is needed *now*. The Court has ordered briefing on a motion to dismiss, which would resolve this case warranting a stay of discovery. While Plaintiffs make the argument that the Federal Rules do not automatically stay discovery pending dispositive motion, *see supra* at 3, that argument ignores the extraordinary discovery at issue in this case and that the standard for a stay of discovery is met in this case. *See* Defs.' Br. at 1–2. And, while *Cheney* did not specifically address the lack of an automatic stay in the Federal Rules, all its lessons suggests that stays of discovery are appropriate in these circumstances.

This matter involves weighty legal issues regarding Executive action, deference, and avoidance of clashes between coequal branches of government. And, as confirmed by the Ninth Circuit's vacating of the Court's preliminary injunction, these issues can be addressed on a non-expedited timeline. *Cheney* advises caution before barreling into discovery against the Executive Office of the President and Plaintiffs have not demonstrated why they need this discovery now, why they cannot obtain it from elsewhere, or even how it would aid in resolution of the forthcoming motion to dismiss.

DATED: November 23, 2026

Respectfully submitted,

Danielle Leonard
Connie K. Chan
Anita T. Alem
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
dleonard@altshulerberzon.com
cchan@altshulerberzon.com
aalem@altshulerberzon.com

By: /s/ Danielle Leonard

*Attorneys for Plaintiffs*

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

TYLER BECKER
Counsel to the Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

By: /s/ Benjamin S. Kurland

BENJAMIN S. KURLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 598-7755
ben.kurland@usdoj.gov

*Counsel for Defendants*

**DECLARATION PURSUANT TO CIV. L.R. 5-1(i)(3)**

I, Danielle Leonard, declare that I have obtained the concurrence in the filing of this document from each of the Defendant signatories listed above.

I declare under penalty of perjury that the foregoing declaration is true and correct. Executed on November 23, 2026, in San Francisco, California.

*/s/ Danielle Leonard*

Danielle Leonard
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
dleonard@altshulerberzon.com

*Attorney for Plaintiffs*